INDEX OF EXHIBITS

Defendants' Notice of Potential Tag-Along Action      Exhibit 1

Motion for Consolidation and Transfer for Pretrial      Exhibit 2
Proceedings Pursuant to 28 U.S.C. § 1407

Brief in Support of Motion for Consolidation and      Exhibit 3
Transfer for Pretrial Proceedings Pursuant to
28 U.S.C. § 1407

Schedule of Actions      Exhibit 4

Certificate of Service      Exhibit 5

# Exhibit

# 1

**Shook,
Hardy&
Bacon.**L.L.P.®

www.shb.com

John K. Sherk, III

2555 Grand Blvd.
Kansas City
Missouri 64108-2613
816.474.6550
816.421.2708 Fax
jsherk@shb.com

February 11, 2008

**VIA FEDERAL EXPRESS OVERNIGHT**
Clerk of the Panel
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E., Room G-255, North Lobby
Washington, DC 20002

Re:  MDL – 1940 – IN RE: Aqua Dots Products Liability Litigation

Dear Clerk:

Enclosed please find the original of Defendants' Notice of Potential Tag-Along Action
for filing. If you have any questions or concerns, please feel free to contact us.

Very truly yours,

John K. Sherk, III
Partner

JKS:gc
Enclosures

cc:  Attached Counsel List

Geneva
Houston
Kansas City
London
Miami
Orange County
San Francisco
Tampa
Washington, D.C.

2814644v1

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE: Aqua Dots Product Liability Litigation | : | MDL Docket No. 1940 |
| | : | |

## NOTICE OF POTENTIAL TAG-ALONG ACTION

Pursuant to Rule 7.5(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Defendants Spin Master, Ltd. and Spin Master, Inc. ("Moving Defendants") hereby respectfully notify the Clerk of the Panel of a potential tag-along action as set forth below and state as follows:

1. By Motion to Transfer dated January 25, 2008, Moving Defendants have requested consolidation and coordination of several actions as set forth in the Schedule of Actions attached thereto.

2. The Panel has not yet heard Moving Defendants' request for consolidation.

3. On February 6, 2008, the following potential tag-along action was filed in the Northern District of Illinois: *Samantha Ford, on behalf of herself and all others similarly situated, v. Spin Master, Limited; Spin Master, Incorporated; and Does 1 through 10,* Case No. 08-C-00804 (United States District Court for the Northern District of Illinois). The case has been assigned to the Honorable Judge Amy J. St. Eve and the Honorable Magistrate Judge Martin C. Ashman.

4.    Like those actions identified in the original Schedule of Actions attached to Moving Defendants' Motion to Transfer, the potential tag-along case is pending in federal court and involves allegations relating to the recall of Aqua Dots.

5.    Transfer of the potential tag-along action to an MDL proceeding in either the Northern District of Illinois or the Eastern District of Arkansas for consolidated and coordinated pre-trial proceedings is therefore appropriate for the same reasons as set forth in this Moving Defendants' Motion to Transfer.

5.    A Copy of the Complaint in the *Ford* case is attached hereto for the Panel's convenience.

Respectfully submitted,

John K. Sherk, Esq.
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone:  816-474-6550
Facsimile:  816-421-5547
tpratt@shb.com

**Counsel for Defendants Spin Master, Ltd. and Spin Master, Inc.**

- 2 -

**FILED**

**FEBRUARY 6, 2008**

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**08 C 804**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SAMANTHA FORD, on behalf of herself and all others similarly situated, | **JUDGE ST. EVE** |
| | **MAGISTRATE JUDGE ASHMAN** |
| Plaintiff, | Case No.: _____ |
| vs. | **CLASS ACTION COMPLAINT** |
| SPIN MASTER, LIMITED; SPIN MASTER, INCORPORATED; and DOES 1 through 10, | **J. N.** |
| | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff, Samantha Ford, by and through her attorneys, based on her individual experience and the investigation of counsel, on behalf of herself and all those similarly situated, alleges the following:

## I.  NATURE OF THE CASE

1.      This action is brought by Plaintiff on behalf of herself and all those similarly situated. This action, brought on behalf of Illinois statewide residents and residents nationwide, seeks declaratory and injunctive relief on behalf of the Plaintiff and class members ("Class") who purchased the Chinese-made "Aqua Dots" toys designed, manufactured, distributed, marketed and/or sold by Defendants Spin Master, Limited, and Spin Master, Incorporated between April 2007 and November 2007.

2.      On November 7, 2007, the United States Consumer Product Safety Commission ("CPSC") announced that the coating on the Aqua Dots beads contains butanediol – a chemical that can be converted to the "date rape" drug gamma-hydroxy butyrate ("GHB"). The butanediol coating on Aqua Dots can turn toxic when the beads are ingested and metabolized. Children who swallow the beads can become comatose, develop respiratory depression, vomit, have seizures or possibly die. About 4.2 million Aqua Dots products have been sold through mass merchandisers nationwide and

internationally. According to the CPSC, the toys should be immediately taken away from children.

3.      Upon information and belief, the only remedy available for consumers who return the Aqua Dots toy to Defendants is a free replacement of the beads or a toy of equal value. Defendants are not offering a refund to consumers who return the product to Defendants as a result of the recall. Additionally, retailers may or may not offer a refund to consumers who return the product as a result of the recall.

4.      As a result of Defendants' conduct, Plaintiff and the Class have suffered injury-in-fact and have lost money and/or property. Plaintiff and the Class seek equitable relief, including permanently enjoining Defendants from engaging in the unlawful activities and practices complained of herein; an order requiring Defendants to implement safety systems such as third-party laboratory testing of all products imported from China and requiring Defendants to disclose the identity of the supplier responsible for coating Aqua Dots with the chemical that converts to GHB; and an order requiring Defendants to stop their current recall and implement a full recall with reasonable procedures that allow Plaintiff and the Class to easily participate in the recall; injunctive relief as described herein; and disgorgement of profits as described herein on behalf of Plaintiff and the Class.

## II.    JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a)(2) because the suit is between a citizen of a state and a subject of a foreign state, and 28 U.S.C. § 1332(d) because Plaintiff and Class members are of diverse citizenship from one or more Defendants; there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000. This Court also has personal jurisdiction over Defendants because Defendants are authorized to do business and in fact do business in this State, and Defendants have sufficient minimum contacts with this State

and otherwise intentionally avail themselves of the markets in this State through the

distribution, promotion, marketing and sale of its products in this State, to render the

exercise of jurisdiction by this Court permissible under traditional notions of fair play and

substantial justice.

6.     Venue is proper in this District under 28 U.S.C. §1391.  The claims asserted in

this Complaint arise, in part, within this District.  A substantial part of the events and

conduct giving rise to the violations of law complained of herein occurred or emanated

from this District.  Additionally, Defendant Spin Master Limited is a foreign corporation.

Defendants also conduct business with consumers in this District and have caused injury

to Illinois residents.

## III.    THE PARTIES

7.     Plaintiff Samantha Ford ("Plaintiff") is the mother of a minor child.  Plaintiff

purchased Aqua Dots Super Studio as a gift for her child on September 29, 2007.

Plaintiff is a resident of Cook County, Illinois.

8.     Defendant Spin Master, Limited ("Spin Master, Ltd."), is a foreign business

entity of unknown structure having its principal place of business at 450 Front Street

West, Toronto, ON M5V1B6 Canada.  Spin Master, Ltd., distributes, markets, promotes

and sells merchandise including Aqua Dots in the State of Illinois and nationwide.

Defendant Spin Master, Ltd., conducts substantial business in the State of Illinois.  At all

relevant times, Spin Master, Ltd., acted by and through its agents, servants, workers,

employees, officers and directors, all of whom were acting through the course and scope

of their actual and apparent authority, agency, duties or employment.

9.     Defendant Spin Master, Incorporated ("Spin Master, Inc."), is a Delaware

corporation with its principal place of business and headquarters located at 300

International Drive, Suite 300, Williamsville, New York 14221.  Spin Master, Inc., is a

wholly-owned subsidiary of Defendant Spin Master, Limited.  Upon information and

belief, Defendant Spin Master, Inc., distributes, markets, promotes and sells merchandise

3

including Aqua Dots in the State of Illinois and nationwide. Spin Master, Inc., conducts substantial business in the State of Illinois. At all relevant times, Spin Master, Inc., acted by and through its agents, servants, workers, employees, officers and directors, all of whom were acting through the course and scope of their actual and apparent authority, agency, duties or employment.

10. Doe Nos. 1 through 10 are persons and/or entities that are or were complicit in the scheme alleged herein. The true identities of Does are currently not known to Plaintiff. Plaintiff seeks to amend this complaint after the actual identities of Does are discovered.

11. Defendants Spin Master, Ltd., and Spin Master, Inc., are herein referred to collectively as "Defendants."

### IV. CO-CONSPIRATOR AND AGENCY ALLEGATIONS

12. Various other persons, firms, and corporations, the identities which are presently unknown, have participated as co-conspirators with Defendants in the violations alleged herein and have performed acts and made statements in furtherance thereof.

13. The facts alleged herein have been committed by Defendants and their co-conspirators, or were authorized, ordered or done by their respective officers, agents, employees, or representatives while actively engaged in the management of each Defendant's business or affairs.

14. Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein for the purpose of enriching themselves at the expense of consumers, resulting in damages to Plaintiff and the Class.

4

## V.   FACTUAL ALLEGATIONS

### A. Aqua Dots Toys

15.     The Aqua Dots toy is a craft kit which allows children to create various multi-dimensional designs.

16.     These toys, sold under brand names including Aqua Dots and Aqua Beads, contain packets of brightly colored beads that children arrange into mosaics, then sprinkle with water; the beads then fuse together in as little as ten minutes to form durable artworks.

17.     The product is available in various different kits with accessories such as a drying fan, applicator pen, design templates for the beads, and spray bottle.  The products are marketed to children ages 4 and over.

18.     The Aqua Dots toys were sold at prices ranging from $17 to as much as $30.

19.     Defendants manufacture, distribute, market, promote and sell merchandise including Aqua Dots in the State of Illinois and nationwide.

20.     The toys identified in Paragraphs 15 and 19 are hereinafter referred to as "Aqua Dots".

### B.     Ingestion of GHB Has Harmful Effects on Young Children

21.     GHB is an odorless, colorless liquid that acts on the central nervous system as a depressant/anesthesia.  *See http://www.nida.nih.gov/Infofacts/RohypnolGHB.html.*

22.     GHB is naturally found in the human nervous system as well as in citrus fruits and wine.  Small doses are considered safe and are used to treat alcoholism, as a weight loss tool, a sedative and general anesthetic.
*See http://www.injuryboard.com/newspost.aspx?id=28376&googleid=28376.*

23.     Butanediol is a solvent, commonly used as a raw material in factories to manufacture some types of plastics and is converted into GHB after human ingestion. *See id.*

5

24.     The Food and Drug Administration ("FDA") in 1999 declared butanediol a Class I Health Hazard, meaning it can cause life-threatening harm.

*See http://www.cnn.com/2007/US/11/08/toys.daterapedrug.ap/index.html.*

25.     The Federal Hazardous Substance Act, 15 U.S.C. §1261(f)(1), defines household products that are toxic as "hazardous substances". Toys that are intended for use by children and that contain a hazardous substance in such a manner to be susceptible to access to children are automatically banned under 15 U.S.C. §1261(q).

26.     Butanediol is manufactured in China and elsewhere, including major multinational companies, and is also marketed over the Internet. *See id.*

27.     The most common effects of GHB after human ingestion include: euphoria, amnesia, intoxication, drowsiness, dizziness, nausea, amnesia, visual hallucinations, hypotension, brady-cardia, severe respiratory depression, and coma. In lower doses the most common side effects are: drowsiness, nausea, and hallucinations. In higher doses the most common side effects are: unconsciousness, seizures, severe respiratory depression, coma or death.

*See http://teenadvice.about.com/library/weekly/aa062502d.htm.*

28.     The FDA prohibited the sale and manufacture of GHB under the *Samantha Reid Date-Rape Prohibition Act of 2000*. Since then, GHB is associated with a more clandestine popularity as an illicit drug, particularly in the southeastern and western U.S. It currently is prevalent in the dance music scene (at raves and nightclubs) as an alternative to "ecstasy" and amphetamines. GHB often is used in conjunction with alcohol. It has been implicated as a "date rape" drug.

*See http://www.emedicine.com/emerg/topic848.htm.*

29.     According to the CPSC, the coating on the Aqua Dots beads that causes the beads to stick to each other when water is added, contains the chemical butanediol that can turn toxic when the beads are ingested. Scientists have found the toy's coating, once metabolized, converts into GHB.

*See http://www.cpsc.gov/cpscpub/prerel/prhtml08/08074.html.*

30.    According to the CPSC, children who swallow the beads can become comatose, develop respiratory depression or have seizures. The CPSC has received several reports over the past several days of children swallowing the Aqua Dots beads. A 20-month-old child in the U.S. swallowed several dozen beads. He became dizzy and vomited several times before slipping into a comatose state for a period of time and was hospitalized. A second child in the U.S. also vomited and slipped into a comatose state and was hospitalized for five days. *See id.*

31.    Recently, U.S. officials have raised alarm about products manufactured in China. Seafood containing harmful drugs, toothpaste with an ingredient found in antifreeze, and pet food containing a chemical used to make plastic came from China to the United States and were the subject of recalls.

### C.    The Discovery of the GHB Conversion in Aqua Dots Toys

32.    In or around early October 2007, three Australian children were hospitalized after ingesting beads from the Bindeez toys, Australia's 2007 Toy of the Year and the Australian version of Aqua Dots.

33.    Two of the children, a two-year old boy and 10-year old girl, swallowed the beads and were both admitted to a Sydney, Australia hospital. The third child, a 19-month old was also receiving medical help after ingesting the Bindeez beads.

34.    A biochemical geneticist, Dr. Kevin Carpenter in Sydney, Australia, identified the problem when the first Australian boy was hospitalized. Australian doctors at Children's Hospital at Westmead first thought the boy had a genetic disorder or was given illegal drugs by a family member. But Dr. Carpenter, using a mass spectrometer, said he saw a large peak of a "substance I didn't recognize." A urine sample found GHB. After two days, the compound dissipated from the boy's system confirming the symptoms were not genetic. *See*

*http://www.nytimes.com/2007/11/08/business/worldbusiness/08recall.html?ex=13522644*
*00&en=3f5ba1b256983b9e&ei=5088&partner=rssnyt&emc=rss*

35.     On or around October 8, 2007, Dr. Carpenter contacted Moose Enterprise
PTY Limited of Australia, who referred him to the Moose Enterprise's Hong Kong
office. The manufacturer provided Dr. Carpenter a list of the beads' ingredients. The list
did not include the dangerous industrial chemical. Dr. Carpenter said the manufacturer
was reluctant to provide details of how the beads were made. "The manufacturer was
very keen that Moose not know what was in them," apparently to prevent Moose from
ordering identical beads from another manufacturer, Dr. Carpenter said. *Id.*

36.     On November 2, 2007, Dr. Carpenter alerted the Ministry of Fair Trading of
New South Wales in Sydney. On the same day, the hospital's poison control center sent
out a warning about the beads to poison centers around Australia.

37.     On November 3, 2007, a mother living near Dr. Carpenter's hospital found
her 10-year-old daughter motionless. Then the girl began vomiting beads. At the
hospital's poison control center, doctors recognized the symptoms immediately. "Both
the children presented with a coma and seizure-like movements," said Dr. Naren Gunja,
the deputy director of the center. *See id.*

38.     On November 6, 2007, Moose Enterprise ordered a recall of Bindeez beads in
Australia. Dr. Carpenter said safety regulators should look beyond Bindeez to conduct
laboratory tests on all similar craft toys.

39.     On November 7, 2007, Peter Mahon, a Moose Enterprise spokesman, said the
company had ordered safety tests on Bindeez beads sold in more than 40 other countries,
including the U.S., but that it was awaiting results before deciding whether to expand its
recall beyond Australia. But Amazon's British Web site, Amazon.co.uk, abruptly
stopped listing Bindeez products for sale. Toys LiFung (Asia) of Hong Kong said that it
had removed all Bindeez items from the Toys "R" Us stores that it operates in Hong
Kong, Singapore and Malaysia.

40.   The Aqua Dots toys were supposed to be made using 1,5-pentanediol, a nontoxic compound found in glue, but instead contained the harmful 1,4-butanediol, which is widely used in cleaners and plastics.

See http://www.cnn.com/2007/US/11/08/toys.daterapedrug.ap/index.html.

41.   Moose Enterprise said that it reviewed the ingredients of the beads and found that some batches did not match the list of ingredients promised by the supplier. "The substitution was not at any time approved by Moose, nor was Moose made aware of any substitution by the supplier," the company said in a statement, adding that it would add a safe but foul-tasting ingredient to future beads to discourage children from eating them. Moose Enterprise declined to identify the supplier.

42.   Although it is not clear why 1,4-butanediol was substituted, it should be noted that there is a significant price difference between butanediol and pentanediol. The Chinese online trading platform ChemNet China lists the price of 1,4-butanediol at between about $1,350-$2,800 per metric ton, while the price for 1,5-pentanediol (the chemical that should have been used) is about $9,700 per metric.

See http://www.cnn.com/2007/US/11/08/toys.daterapedrug.ap/index.html.

43.   Bindeez has since been pulled from store shelves in Australia.

44.   China's General Administration of Quality Supervision, Inspection and Quarantine (AQSIQ) said the Bindeez toys were manufactured by the Wangqi Product Factory in China's southern city of Shenzhen.

45.   On November 7, 2007, Defendant Spin Master, Ltd., in conjunction with the CPSC, announced a recall of approximately 4.2 million Aqua Dots toys sold in the U.S. between April 2007 and November 2007.

46.   Defendants Spin Master, Ltd., executed the recalls because the coating on the beads, which Defendants designed, manufactured, distributed, marketed and/or sold, and that causes the beads to stick to each other when water is added, converts to GHB that

9

can turn toxic when many are ingested. Upon information and belief, the Aqua Dots were also manufactured in Shenzhen in the southern Guangdong province of China.

47.     On November 9, 2007, China banned the export of these toys.

48.     However, according to a December 21, 2007 *US Federal News* article, U.S. Customs and Border Protection officers in Seattle intercepted several large shipments of Aqua Dots toys in the early weeks of December 2007.

49.     According to a November 9, 2007 *The Washington Post* article, Congress is considering legislation to require manufacturers to pay for independent tests by certified labs following the recent recalls of dangerous toys from China.

### D.     Defendants Knew, Or Should Have Known, That Aqua Dots' Coating Converts to GHB

50.     Defendants knew, or should have known, that the coating on Aqua Dots converts to the illegal GHB substance and presented a serious risk to the health and safety of children.

51.     Defendants, however, failed to adequately screen and test the Aqua Dots imported from China.

52.     Moreover, Defendants ignored recent reports of unsafe products imported from China, including reports of toys containing impermissible and unsafe levels of lead, seafood containing harmful drugs, toothpaste with an ingredient found in antifreeze, and pet food containing a chemical used to make plastic. These reports followed a recall in November 2006 by Target and the CPSC of 190,000 toys and trucks made in China due to paint containing excessive lead, and a recall in 2005 by Dollar General involving similar circumstances.

### E. Defendants Failed to Promptly Notify the CPSC Regarding the Unsafe Nature of Aqua Dots

53.     Manufacturers, importers, distributors and retailers are required to notify the CPSC within 24 hours when they discover information relating to a dangerous defect in a product.

54.     Upon information and belief, Defendants learned about the unsafe nature of the Aqua Dots on November 4, 2007, when Defendants were notified by the Ministry of Fair Trading of the problem.

55.     Upon information and belief, Defendants notified U.S. retailers about the problem on November 7, 2007, approximately three days after discovering GHB in Aqua Dots or Bindeez toys in Australia.

56.     China's AQSIQ is the only entity that has confirmed that the Aqua Dots toys were manufactured by the Wangqi Product Factory.  Defendants still have not officially confirmed the name of their supplier responsible for coating Aqua Dots toys with butanediol that converts to GHB.  Thus, other toy companies are prevented from knowing for certain which suppliers to avoid.

### F. Defendants' Recall  Program Does Not Provide Adequate Compensation

57.     Plaintiff and the Class purchased an Aqua Dots toy sometime between April 2007 and November 7, 2007.

58.     Plaintiff purchased Aqua Dots reasonably believing that it was safe for her child to play with, including the knowledge that children often place toys in their mouths as well as their hands after coming into contact with the toys, like Aqua Dots, while playing.

59.     Defendants heavily marketed Aqua Dots to children and touted themselves as the most trusted named in toys.  Defendants, however, failed to disclose material

11

information to Plaintiff and the Class, namely, that the Aqua Dots contained a toxic chemical that converts to GHB, and that GHB poses a danger and health risk to children.

60. Upon information and belief, instead of offering Plaintiff and the Class full refunds of the purchase price paid for the Aqua Dots, Defendants only agree to provide free replacement beads or a toy of equal value. Retailers may or may not offer full refunds for the purchase of Aqua Dots. To obtain the replacement beads, Plaintiff and the Class follow onerous procedures. First, the Plaintiff and the Class must submit an on-line form or call Defendants' recall hotline, and the Defendants will arrange to send a prepaid envelope in order for the purchaser to return the Aqua Dots beads. Once received by Defendants, Defendants will arrange to send the consumer replacement Aqua Dots beads.

61. Most consumers, however, will not take the time to submit their contact information on-line due to the onerous procedures and also because most, if not all of Defendants' products, are manufactured in China and may present the same or different safety hazards. Additionally, when a consumer calls the Aqua Dots recall hotline, the consumer is often placed on hold for a long period of time (in some cases, up to two hours).

62. As a result of Defendants' actions as alleged herein, Plaintiff and each Class member has suffered injury-in-fact and has lost money and/or property, notwithstanding Defendants' offer to provide replacement beads or a toy of equal value which is inadequate to compensate Plaintiff and the Class.

## VI.    CLASS ACTION ALLEGATIONS

63. For Counts One and Two, this action is brought as an Illinois statewide class action individually and on behalf of other similarly situated as a class action under Illinois Rule 735 ILCS 5/2-801, on behalf of a class initially defined as:

> All persons throughout the state of Illinois who purchased one or more Aqua Dots between April 1, 2007 through November 7,

12

> 2007, and were exposed to the Aqua Dots toys that were
> manufactured and/or distributed by Defendants subject to the recall
> announced by the CPSC on November 7, 2007. Upon completion
> of discovery with respect to the scope of the Class, Plaintiff
> reserves the right to amend the class definition. Excluded from the
> Class are Defendants and any entity in which any Defendant has a
> controlling interest, and their legal representatives, officers,
> directors, assignees and successors. Also excluded from the Class
> is any judge or justice to whom this action is assigned, together
> with any relative of such judge or justice within the third degree of
> relationship, and the spouse of any such persons.

64.    For Counts Three and Four, this action is brought as a nationwide class action individually and on behalf of others similarly situated as a Class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a class initially defined as:

> All persons throughout the United States and its territories who
> purchased one or more Aqua Dots between April 1, 2007 through
> November 7, 2007, and were exposed to the Aqua Dots toys that
> were manufactured and/or distributed by Defendants subject to the
> recall announced by the CPSC on November 7, 2007. Upon
> completion of discovery with respect to the scope of the Class,
> Plaintiff reserves the right to amend the class definition. Excluded
> from the Class are Defendants and any entity in which any
> Defendant has a controlling interest, and their legal representatives,
> officers, directors, assignees and successors. Also excluded from
> the Class is any judge or justice to whom this action is assigned,
> together with any relative of such judge or justice within the third
> degree of relationship, and the spouse of any such persons.

65.    **Numerosity**: Membership in the Class is so numerous it is impractical to bring all Class members before the Court. The identity and exact number of Class members is unknown but can be determined from Defendants. It is estimated to be tens of thousands or more.

66.    **Commonality**: There are numerous and substantial questions of law and fact common to all of the members of the Class which control this litigation and predominate over any individual issues pursuant to Rule 23(b)(3). These common issues include, but are not limited to:

a.    Whether Defendants designed, manufactured, marketed and distributed toys containing 1,4-butanediol which can be converted to the toxin GHB when ingested;

b.    Whether Defendants advertised, represented or otherwise presented to the public toys that it manufactures, distributes and sells as safe and high quality;

c.    Whether Defendants falsely represented or omitted material information regarding the tainted toys or their recall;

d.    Whether Defendants engaged in unfair or deceptive trade practices under Illinois law and/or similar laws of other states;

e.    Whether Defendants asserted to disclaim any implied warranties;

f.    Whether Defendants intended for the toys to be purchased by Plaintiff and Class members, or other consumers for use by children;

g.    Whether using the toys as intended resulted in loss, injury and/or damages to Plaintiff and Class members;

h.    Whether the toys are inherently dangerous;

i.    Whether Defendants are refusing to adequately reimburse Plaintiff and the members of the Class for the cost of the toys;

j.    Whether, as a result of Defendants' omission and reckless conduct, children have been exposed to a known hazardous substance;

k.    Whether Plaintiff and other members of the Class are entitled to injunctive relief; and

l.    Whether Defendants have been unjustly enriched.

67.    **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the Class sustained damages arising out of the Defendants'

14

wrongful conduct as detailed herein. Specifically, Plaintiff's claims and the Class members' claims arise from Defendants' failure to disclose the fact that the toxic chemical butanediol in Aqua Dots converts to GHB during the Class Period.

68.    **Adequacy**: Plaintiff will fairly and adequately protect the interests of the Class members and have retained counsel competent and experienced in class action lawsuits. Plaintiff has no interests antagonistic to or in conflict with those of the Class members and therefore should be an adequate representative for the Class members.

69.    **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by individual members of the Class may in some instances be relatively small, the expense and burden of individual litigation make it impossible for such Class members individually to redress the wrongs done to them. Also, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and possibly conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

## VII.  CLAIMS FOR RELIEF

### COUNT ONE
### Damages under the Illinois Consumer Fraud Act

70.    The preceding allegations are re-alleged and incorporated by reference as if fully set forth herein.

71.    Plaintiff and the Class are consumers within the meaning and coverage of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"),  815 ILCS 505/1, et seq.

72.    The Illinois Consumer Fraud Act provides:

> Unfair methods of competition and unfair or deceptive acts
> or practices, including but not limited to the use or
> employment of any deception, fraud pretense, false
> promise, misrepresentation or the concealment, suppression
> or omission of any material fact, with intent that others rely
> upon the concealment, suppression or omission of such
> material fact, or the use or employment of any practice
> described in Section 2 of the "Uniform Deceptive Trade
> Practices Act," approved August 5, 1965, in the conduct of
> any trade or commerce are hereby declared unlawful
> whether any person has in fact been misled, deceived or
> damaged thereby.

815 ILCS 505/2.

73.     Because of its non-disclosure of material facts alleged above, Defendants deceived and continue to deceive Plaintiff and the other members of the Class. Defendants' deceptive conduct occurred in the course of its engaging in trade or commence.

74.     By advertising and marketing Aqua Dots in various media including broadcasts, website, and written promotional and other materials, Defendants have misled consumers about the safety of the toy as described above. Defendants engaged in these deceptive acts and practices in order that Plaintiff and the Class members, in reliance thereof, would purchase Aqua Dots.

75.     The unfair and deceptive trade acts and practices of Aqua Dots have directly, foreseeably, and proximately caused damages to Plaintiff and the Class members.

76.     Defendants' actions and omissions to act, including the false and misleading express and/or implied representations and omissions of material fact regarding the safety of Aqua Dots, constitute acts, uses, or employment by Defendants and its agents of deception, unconscionable commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material

16

facts with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of a product, in violation of the Illinois Consumer Fraud Act, making such deceptive acts and practices illegal.

**COUNT TWO**
**Damages under the Illinois Uniform Deceptive Trade Practices Act ("Deceptive Practices Act")**

77.     The preceding allegations are re-alleged and incorporated by reference as if fully set forth herein.

78.     Plaintiff, the Class members, and Defendants are each a "person" within the meaning of 815 ILCS 510/1.

79.     At all times relevant hereto, Defendants conducted trade and commerce within the meaning of 815 ILCS 510/2.

80.     Defendants' unlawful conduct as described herein arose, is directed, and emanates from Defendants' headquarters to the detriment of Plaintiff in Illinois and throughout the United States.

81.     Defendants' actions and omissions to act, including the false and misleading express and/or implied representations and omissions of material fact regarding the safety of Aqua Dots, constitute acts, uses, or employment by Defendants and its agents of deception, unconscionable commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of a product, making such deceptive acts and practices illegal a violation of the provisions of the Illinois Deceptive Practices Act 815 ILCS 510/2.

17

## COUNT THREE
### Breach of Implied Warranty Pursuant to the Illinois U.C.C.

82.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

83.     Under the Uniform Commercial Code in Illinois and in other states, there exists an implied warranty of merchantability.  *See* 810 ILCS 5/2-314.

84.     At the time that Defendants designed, manufactured, sold and/or distributed the toys, Defendants knew the purpose for which the toys were intended and impliedly warranted that the toys were of merchantable quality; were free of hazardous substances such as butanediol or GHB; were free of manufacturing defects; and were safe and fit for their ordinary purpose – play toys for children.

85.     Defendants designed, manufactured, sold and/or distributed the toys to parents, guardians, and other consumers of children's toys.

86.     Plaintiff and the Class relied upon the skill, superior knowledge and judgment of the Defendants to sell toys that were reasonably safe for use by children.  Plaintiff could not have known about the risks associated with the toys until after Defendants issued a public notice recalling the toys announcing that the toys were not safe or fit for the ordinary purpose and intended use, and were not free of manufacturing defects, but instead were potentially laden with butanediol or GHB, which are banned hazardous substances because of their extreme danger when ingested.

87.     Defendants breached their implied warranties under Illinois law in connection with the sale of the toys to Plaintiff and the Class.

88.     The Aqua Dots toys were unmerchantable because the products did not meet the capabilities as represented and marketed.

89.     As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff and the Class have been and will suffer damages including economic damages, including the cost of the defective product.

90.     By reason of the foregoing, Defendant is liable to Plaintiff and the Class in an amount to be proved at trial.

## COUNT FOUR
## Unjust Enrichment

91.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

92.     Defendants received from Plaintiff and Class members certain monies from their purchase of Aqua Dots which are excessive and unreasonable, and are the result of Defendants' deceptive conduct. The Aqua Dots sold by Defendants were unreasonably dangerous and unfit for their intended purpose.

93.     As a result, Plaintiff and the Class have conferred a benefit on Defendants, and Defendants have knowledge of this benefit and have voluntarily accepted and retained the benefit conferred on it.

94.     Defendants will be unjustly enriched if they are allowed to retain such funds, and each Class member is entitled to an amount equal to the amount each Class member enriched Defendants and for which Defendants have been unjustly enriched.

95.     By reason of the foregoing, Defendants are liable to disgorge to Plaintiff and the members of the Class the amount by which each Class member enriched Defendants and for which Defendants have been unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, pray for judgment against Defendants as follows:

A.     For an order certifying the proposed nationwide Class herein under Federal Rule of Civil Procedure 23(a) and (b)(3), Illinois state class under 735 ILCS 5/2-801,  and appointing Plaintiff and Plaintiff's counsel of record to represent said Class;

B.     For an order that Defendants be permanently enjoined from engaging in the unlawful activities and practices complained of herein;

C.     Awarding actual, compensatory and consequential damages;

D.     For an order requiring Defendants to implement safety systems such as third-party laboratory testing of all products imported from China and requiring Defendants to disclose the identity of the supplier responsible for coating Aqua Dots with the chemical that converts to GHB;

E.     For an order awarding restitution and disgorgement of all monies paid by Plaintiff and the Class  because of Defendants' unlawful, unfair, and/or fraudulent business practices complained of herein;

F.     For an order requiring Defendants to stop their current recall and implement a full recall with reasonable procedures that allow Plaintiff and the Class to easily participate in the recall;

G.     Awarding punitive and treble damages as provided under relevant laws;

H.     For declaratory relief as this Court deems appropriate;

I.     For attorneys' fees and costs of suit, including expert witness fees;

J.     For an order awarding pre-judgment and post-judgment interest as prescribed by law; and

K.     For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED:  February 6, 2008

Samantha Ford, individually and on behalf
of all others similarly situated,


/s__William J. Harte_____

William J. Harte
**WILLIAM J. HARTE LTD.**
111 West Washington Street
Suite 1100
Chicago, Illinois 60602
Telephone:  (312) 726-5015
Facsimile:  (312) 641-2455

*Attorneys Plaintiff Samantha Ford*


*Of Counsel:*

Mila F. Bartos
Tracy Rezvani
Karen J. Marcus
Rosalee B. Connell
**FINKELSTEIN THOMPSON LLP**
The Duval Foundry
1050 30th Street NW
Washington, D.C. 20007
Telephone:  (202) 337-8000
Facsimile:  (202) 337-8090

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

---

IN RE: Aqua Dots Product Liability Litigation   **:**      MDL Docket No. 1940

---

## PROOF OF SERVICE

I hereby certify that on February 11, 2008, a copy of the Notice of Potential Tag-

Along Action was served on counsel listed below either via electronic service where previously

agreed to in writing (as evidenced by listing of e-mail address) or, in instances in which there

has not been agreement as to electronic service, by U.S. Mail.

Alex G. Streett
James A. Streett
STREETT LAW FIRM, P.A.
107 West Main
Russellville, Arkansas 72811
alex@streettlaw.com
james@streettlaw.com
**Counsel for Plaintiff: Donald C. Erbach, Jr.**, E.D. Arkansas, No. 4-07-CV-01112

Rosemary M. Rivas
Mark Punzalan
FINKELSTEIN THOMPSON LLP
100 Bush Street, Suite 1450
San Francisco, California 94101
rrivas@finkelsteinthompson.com
mpunzalan@finkelsteinthompson.com

Mila F. Bartos
Tracy Rezvani
Karen J. Marcus
Rosalee B. Connell
FINKELSTEIN THOMPSON LLP
1050 30th Street NW
Washington, DC 20007
mbartos@finkelsteinthompson.com

- 3 -

trezvani@finkelsteinthompson.com
kmarcus@finkelsteinthompson.com
rconnell@finkelsteinthompson.com
**Counsel for Plaintiff: Sandra I. Soderstedt**, C.D. California, No. CV07-07546

Laurence D. King
Linda M. Fong
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, California 94104
lking@kaplanfox.com
lfong@kaplanfox.com

Lori S. Brody
KAPLAN FOX & KILSHEIMER LLP
1801 Century Park East, Suite 1460
Los Angeles, California 90067
lbrody@kaplanfox.com

Frederic S. Fox
Donald R. Hall
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, New York 10022
ffox@kaplanfox.com
dhall@kaplanfox.com

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Boulevard, Suite B
Oak Park, Illinois 60301

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
**Counsel for Plaintiff: Kim A. Cosgrove**, C.D. California, No. CV07-07544

Paul J. Geller
Jack Reise
Stuart A. Davidson
James L. Davidson
Elizabeth A. Shonson
COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP

- 4 -

120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432-4809
PGeller@csgrr.com
jreise@csgrr.com
SDavidson@csgrr.com
jdavidson@csgrr.com
eshonson@csgrr.com

John J. Stoia, Jr.
Rachel L. Jensen
COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, California 92101

Adam Balkan
John Patterson
BALKAN & PATTERSON, LLP
601 South Federal Highway, Suite 302
Boca Raton, Florida 33432
**Counsel for Plaintiff: Simon Bertanowski**, S.D. Florida, No. 07-22941

Ben Barnow
Sharon Harris
Erich Schork
BARNOW AND ASSOCIATES, P.C.
One North La Salle Street, Suite 4600
Chicago, Illinois 60602
b.barnow@barnowlaw.com

Aron D. Robinson
THE LAW OFFICE OF ARON D. ROBINSON
19 South LaSalle Street, Suite 1300
Chicago, Illinois 60603
adroblaw@aol.com

Scott R. Tack
ALLEN ALLEN & TACK
P.O. Box 1409
210 Chickasha Avenue
Chickasha, Oklahoma 73023

Lance A. Hark, P.A.
Sara Clasby Engel, P.A.
HARKE & CLASBY LLP

155 South Miami Avenue, Suite 600
Miami, Florida 33130
**Counsel for Plaintiff: Robyn Williams**, N.D. Illinois, No. 07CV6387

Ralph K. Phalen
RALPH K. PHALEN ATTY. AT LAW
1000 Broadway, Suite 400
Kansas City, Missouri 64105
phalenlaw@comcast.net

David Spencer
MCGONAGLE SPENCER, P.C.
105 East 5th Street, Suite 302
Kansas City, Missouri 64106
mcspen@yahoo.com

Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North La Salle Street, Suite 4600
Chicago, Illinois 60602
b.barnow@barnowlaw.com
**Counsel for Plaintiff: Michael J. Burgess**, W.D. Missouri, No. 3:07-cv-05110

Keith E. Patton
SCHMIDT & CLARK
2911 Turtle Creek Boulevard, Suite 1400
Dallas, Texas 75219

William N. Riley
Christopher A. Moeller
Joseph N. Williams
PRICE WAICUKAUSKI & RILEY
301 Massachusetts Avenue
Indianapolis, Indiana 46204
**Counsel for Plaintiff: Eric K. Botsch**, N.D. Texas, 07 CV 1948



**Counsel for Defendants Spin Master, Ltd.
and Spin Master, Inc.**

2012109v1

Docket:  1940 - IN RE: Aqua Dots Products Liability Litigation
Status:  Pending on  / /
Transferee District:        Judge:                                                    Printed on 02/05/2008

## ATTORNEY - FIRM                          REPRESENTED PARTY(S)

Barnow, Ben                          =>Phone: (312) 621-2000  Fax: (312) 641-5504  Email: b.barnow@barnowlaw.com
BARNOW & ASSOCIATES PC                   Williams, Robyn*
One North LaSalle Street
Suite 4600
Chicago, IL 60602-4606

Bartos, Mila F.                      =>Phone: (202) 337-8000  Fax: (202) 337-8090  Email: mbartos@finkelsteinthompson.com
FINKELSTEIN THOMPSON LLP                  Soderstedt, Sandra Irene*
1050 30th Street, N.W.
Washington, DC 20007

Geller, Paul J.                      =>Phone: (561) 750-3000  Fax: (561) 750-3364  Email: PGeller@csgrr.com
COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP   Bertanowski, Sara; Bertanowski, Simon; White (Father-Samuel M.), Anthony B.
120 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432

Gilreath, Dana M.                    =>Phone: (562) 215-5000  Fax: (562) 216-5001  Email: dgilreath@clinton-clinton.com
CLINTON & CLINTON                        Moose Enterprise Pty Ltd.*
100 Oceangate
14th Floor
Long Beach, CA 90802

King, Laurence D.                    =>Phone: (415) 772-4700  Fax: (415) 772-4707  Email: LKing@kaplanfox.com
KAPLAN FOX & KILSHEIMER LLP              Cosgrove, Kim A.*
350 Sansome Street
Suite 400
San Francisco, CA 94104

Phalen, Ralph K.                     =>Phone: (816) 589-0753  Fax: (816) 471-1701  Email: phalenlaw@comcast.net
1000 Broadway                            Burgess, Michael J.*
Suite 400
Kansas City, MO 64105

Riley, William N.                    =>Phone: (317) 633-8787  Fax: (317) 633-8797  Email: wriley@price-law.com
PRICE WAICUKAUSKI & RILEY LLC            Botsch, Eric K.*
The Hammond Block Building
301 Massachusetts Avenue
Indianapolis, IN 46204

Sherk, John K.                       =>Phone: (816) 474-6550  Fax: (816) 421-5547  Email: jsherk@shb.com
SHOOK HARDY & BACON LLP                  Spin Master, Inc.*; Spin Master, Ltd.*; Target Corp.*
2555 Grand Blvd.
Kansas City, MO 64108-2613

Streett, James Alex                  =>Phone: (479) 968-2030  Fax: (479) 968-6253  Email: james@streettlaw.com
STREETT LAW FIRM PA                      Erbach, Jr., Donald C.*; Streett, Stephanie S.*
107 West Main Street
Russellville, AR 72801

# Exhibit

# 2

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

———————————————————————          :
                                  :
In Re: Aqua Dots Litigation       :          MDL Docket No. _____
                                  :
———————————————————————          :

## MOVING DEFENDANTS' MOTION FOR CONSOLIDATION AND TRANSFER FOR PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407

Spin Master, Ltd. and its wholly-owned subsidiary, Spin Master, Inc., (collectively, "Moving Defendants") herein move pursuant to 28 U.S.C. § 1407 for the transfer and consolidation for pretrial proceedings of seven related putative class actions set forth in the Schedule of Actions, as further set forth in the contemporaneously-filed Brief in Support.

WHEREFORE, Moving Defendants respectfully request that this Panel issue an Order transferring the seven actions named in the Schedule of Actions and the Brief in Support pursuant to 28 U.S.C. § 1407 for coordination and consolidation of pretrial proceedings either to Judge Coar of the Northern District of Illinois or to Judge Holmes of the Eastern District of Arkansas, and for such other relief as the Court deems just and equitable.

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

BY: _Laurel J Harbour_

     John K. Sherk, MO #35963
     Laurel J. Harbour, MO #25995
     Andrew D. Carpenter, MO #47454

2555 Grand Blvd.
Kansas City, Missouri 64108-2613
Telephone (816) 474-6550
Facsimile (816) 421-5547
jsherk@shb.com
lharbour@shb.com
acarpenter@shb.com

Ronald Y. Rothstein, IL #06225965
Thomas J. Wiegand, IL #06193512
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone (312) 558-5947
Facsimile (312) 558-5700
rrothstein@winston.com
twiegand@winston.com

ATTORNEYS FOR MOVING DEFENDANTS
SPIN MASTER, LTD. AND SPIN MASTER,
INC. AND DEFENDANT TARGET
CORPORATION

2

# Exhibit

## 3

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| | : | |
| In Re: Aqua Dots Litigation | : | MDL Docket No. _____ |
| | : | |

## MOVING DEFENDANTS' BRIEF IN SUPPORT
## OF CONSOLIDATION AND TRANSFER FOR PRETRIAL PROCEEDINGS
## PURSUANT TO 28 U.S.C. § 1407

Spin Master, Ltd., a Canadian corporation, and its wholly-owned American

subsidiary, Spin Master, Inc., (collectively, "Moving Defendants") submit this brief in support of

transfer and consolidation for pretrial proceedings of seven related putative class actions:

- *Bertanowski et al. v. Moose Enterprise Pty Ltd., Spin Master, Ltd., Spin Master, Inc., and Target Corp.*, No. 07-22941, in the United States District Court for the Southern District of Florida;

- *Botsch v. Spin Master, Ltd. and Spin Master, Inc.*, No. 307-CV-1948-G, in the United States District Court for the Northern District of Texas;

- *Burgess v. Spin Master, Ltd.*, No. 07-5110-CV-SW-RED, in the United States District Court for the Western District of Missouri;

- *Cosgrove v. Spin Master, Ltd., Spin Master, Inc., and Moose Enterprises*, No. CV07-7544, in the United States District Court for the Central District of California;

- *Erbach, et al.  v. Spin Master, Ltd. and Spin Master, Inc.*, No. 4-07-CV-01112, in the United States District Court for the Eastern District of Arkansas;

- *Soderstedt v. Moose Enterprise Pty Ltd., Spin Master, Ltd., Spin Master, Inc., and Does 1 through 10*, No. CV07-07546, in the United States District Court for the Central District of California;  and

- *Williams v. Spin Master, Ltd.*, No. 07CV6387, in the United States District Court for the Northern District of Illinois.[1]

---

[1]    A full list of the parties in each case is contained in the Schedule of Actions, which is filed contemporaneously herewith.

Transfer and consolidation of these actions for pretrial proceedings, including dispositive motions, class action discovery, and class certification briefing and hearing, will further the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. Such transfer and consolidation will also avoid the significant risk of inconsistent pretrial rulings, an important consideration when dealing with putative nationwide classes.

## INTRODUCTION

Moving Defendants are defendants in seven lawsuits filed in six federal jurisdictions: the United States District Courts for the Eastern District of Arkansas, the Central District of California, the Southern District of Florida, the Northern District of Illinois, the Western District of Missouri, and the Northern District of Texas.[2] The core factual allegations in these seven cases are similar, focusing on a line of toys called "Aqua Dots." Aqua Dots are craft kits that allow children to create various multi-dimensional designs using small colored beads that fuse together when sprayed with water. They were allegedly manufactured by a Chinese company represented by Moose Enterprise Pty Limited ("Moose"), an Australian entity, and distributed by Moving Defendants.[3] Unbeknownst to Moving Defendants, the Chinese manufacturer of Aqua Dots substituted 1,4-butanediol for 1,5-pentanediol in manufacturing the coating on Aqua Dots. In late October or early November 2007, the Consumer Product Safety Commission received reports that two children were hospitalized after ingesting Aqua Dots coated with 1,4-butanediol. Moving Defendants worked with the CPSC to voluntarily recall of all Aqua Dots products on November 7, 2007.

---

[2]   Spin Master, Ltd., the Canadian parent company located in Toronto, Ontario, is a defendant in all seven of the pending cases. Its wholly-owned U.S. subsidiary, Spin Master, Inc., is a defendant in five of the cases.

[3]   Moving Defendants do not know whether Moose, a defendant in three of the seven pending actions on opposite sides of the country, has been served. Moose has not entered an appearance in any of the cases. Moreover, the Chinese manufacturer is not currently a party to any of the cases.

2

The seven cases listed above each seek certification of a nationwide class action challenging the adequacy of the CPSC-Spin Master voluntary recall. The claims asserted in the various complaints include: consumer protection violations; unjust enrichment; implied warranty; negligence; strict liability; medical monitoring; and express warranty. One or both Moving Defendants are named in each of the seven cases.

For the reasons set forth below, Moving Defendants propose the consolidation of these seven actions for pretrial proceedings before either Judge David H. Coar of the Northern District of Illinois, who is currently presiding over the *Williams* Aqua Dots case, or Chief Judge J. Leon Holmes of the Eastern District of Arkansas, who is presiding over the *Erbach* Aqua Dots case.

## ARGUMENT

**I.      Consolidation and Transfer of These Related Actions For Pretrial Proceedings Will Further the Goals of Section 1407.**

The seven actions discussed above – all of which are premised on parallel factual allegations and seek similar relief – should be consolidated and coordinated for pretrial proceedings, including the determination of whether class certification is appropriate in this instance. Actions that involve common allegations of fact may be transferred and consolidated for pretrial proceedings under 28 U.S.C. § 1407 to "serve the convenience of parties and witnesses" and to "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. The purpose of the Judicial Panel on Multidistrict Litigation rules is to (1) eliminate duplicative discovery; (2) avoid conflicting rulings and schedules; (3) reduce litigation costs; and (4) conserve the time and effort of parties, attorneys, witnesses, and courts. See Manual for Complex Litigation (Fourth) at § 20.131 (2004), citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968), and *In re Pfizer Inc. Sec., Derivative & ERISA Litig.*, 374 F. Supp. 2d

3

1348 (J.P.M.L. 2005).    Without consolidation for pretrial proceedings, the objectives and advantages of MDL rules will be defeated.

While Section 1407 does not require a "complete identity or even a majority" of common issues for transfer to be appropriate, *In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004), there is substantial overlap in the allegations and legal theories here. Factually, each Plaintiff generally alleges that Aqua Dots were defectively designed and/or manufactured in China; that Aqua Dots were improperly coated with 1,4-butanediol; that children were exposed to a hazardous substance and are at an increased risk of becoming ill; that a voluntary recall was issued on November 7, 2007; and that Moving Defendants have not offered an adequate remedy to customers returning Aqua Dots.

Transfer and consolidation for pretrial proceedings will streamline the discovery process in these cases by avoiding substantial duplication.    It is almost certain that the parties will seek many of the same documents and information in each of the seven actions, and consolidation for pretrial proceedings will serve the parties' and witnesses' convenience by eliminating duplicative discovery requests and depositions and by facilitating the resolution of discovery disputes.    *See In re McDonalds' French Fries Litig.*, 444 F. Supp. 2d 1342, 1343 (J.P.M.L. 2006) ("Centralization under Section 1407 is necessary . . . to eliminate duplicative discovery . . . .").    Further, factual discovery of entities in China and Australia will be difficult enough in one case and should be avoided in multiple cases simultaneously.

The complaints also substantially overlap in terms of legal issues.    All Plaintiffs have asserted claims sounding in both contract (every one claims breach of warranty) and in tort (including claims in six of the seven cases for violations of the several states' consumer protection acts and for unjust enrichment).    All of the complaints face several similar legal Rule

4

12 challenges, such as the problem that no Plaintiff can show damages because they could choose either replacement product or a full refund of the purchase price. Consolidation for pretrial proceedings is necessary to avoid inconsistent rulings on these types of pretrial matters. *See In re Maytag Corp. Neptune Washer Prods. Liab. Litig.*, 333 F. Supp. 2d 1382, 1383 (J.P.M.L. 2004) (recognizing that centralization was appropriate in order to prevent inconsistent pretrial rulings, especially with respect to jurisdictional matters); *see also In re Puerto Rico Air Disaster Litig.*, 340 F. Supp. 492 (D.P.R. 1972) (dismissal of certain cases by transferee court for lack of personal jurisdiction); *In re TMJ Implants Prods. Liab. Litig.*, 872 F. Supp. 1019 (D. Minn. 1995), *aff'd*, 97 F.3d 1050 (8th Cir. 1996) (granting of partial summary judgment by transferee court). The consolidation of these cases before a single judge for pretrial proceedings will conserve judicial resources by allowing a single judge to focus on the factual intricacies of these cases.

Every one of the seven cases also seeks to be declared a nationwide class action, itself a complicated legal question. Individual district court decision-making in the related actions will create the very real risk of inconsistent or conflicting class certification determinations. This Panel has expressly recognized the "difficulty of class certification decisions" and the importance of pretrial coordination and consolidation before a single judge in order to avoid duplicative and inconsistent class certification rulings. *See In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 655 (J.P.M.L. 1981); *see also In re Pfizer Inc. Sec., Derivative & "ERISA" Litig.*, 374 F. Supp. 2d 1348, 1349 (J.P.M.L. 2005) (holding centralization "[n]ecessary in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings, especially with respect to questions of class certification; and conserve the resources of the parties, their counsel and the judiciary"). In consolidated litigation, the

5

transferee court is authorized to decide all class certification issues.  *See In re Piper Aircraft Distrib. Sys. Antitrust Litig.*, 405 F. Supp. 1402, 1403-04 (J.P.M.L. 1975) ("As the Panel has held in several past litigations, matters concerning class action certification should be included in the coordinated or consolidated pretrial proceedings in order to prevent inconsistent rulings and promote judicial efficiency.").

## II.    The Northern District of Illinois and the Eastern District of Arkansas Are Appropriate Transferee Courts for the Aqua Dots Litigation.

The central factors to be considered by this Panel in making the determination of the appropriate forum are:

(1)    the location of the parties, witnesses, and documents;

(2)    the accessibility of the proposed transferee district to parties and witnesses; and

(3)    the respective caseloads of the proposed transferee district courts.

*See In re Corn Derivatives Antitrust Litig.,* 486 F. Supp. 929, 931-32 (J.P.M.L. 1980).  Here, the "center of gravity" of the litigation and the dockets of the courts in which these cases are pending support the Northern District of Illinois and the Eastern District of Arkansas as favorable transferee courts for these cases.

### A.    The Northern District Of Illinois Is An Appropriate Transferee Court for This Litigation.

#### 1.    A Material Number of the Parties and Witnesses Are Located In or Near the Northern District of Illinois

The seven Aqua Dots cases are concentrated predominately in the Central Time Zone.  One of the seven pending cases was filed in Illinois;[4] one in Missouri; one in Arkansas; and one in Texas.  The other three cases are filed in two outlying jurisdictions: the Central

---

[4]    The class representative in the Illinois-based case is an Oklahoman, further underscoring the Midwestern emphasis in the pending Aqua Dots cases.

6

District of California[5] and the Southern District of Florida. Thus, the primary witnesses in these cases – the putative class representatives – and their evidence are not concentrated in a single jurisdiction, and the Northern District of Illinois is reasonably central for them.

However, Moving Defendant Spin Master, Ltd., is a Canadian company and the parent company of the other Moving Defendant, Spin Master, Inc. Its offices are located in Toronto, Ontario, and most of its witnesses and documents are located there. The Northern District of Illinois is the jurisdiction most geographically proximate to these witnesses and documents.

2.    The Northern District of Illinois Is Readily Accessible to Parties, Witnesses, and Counsel.

Although this litigation is only in its infancy, it already involves parties, witnesses, and counsel scattered across the United States and in Ontario, Canada. In litigation such as this, there are tangible benefits to consolidation in a centralized district with frequent commercial airline flights.

The Northern District of Illinois is the most convenient option of the six districts where theses cases are pending, and it is easily accessible to the parties and witnesses. The Chicago airports offer the full service of virtually every major domestic air carrier, with non-stop service available to most major metropolitan areas in the United States. It is also the most convenient location for Moving Defendant Spin Master, Ltd. In fact, this Panel has previously recognized the advantage of consolidating national litigation in the geographically-centralized and easily accessible Northern District of Illinois. *See In re McDonalds' French Fries Litig.*, 444 F. Supp. 2d 1342, 1343 (J.P.M.L. 2006) ("[G]iven the geographic dispersal of the

---

[5]    The sole named plaintiff in the *Cosgrove* California case is a New York resident.

constituent actions, the Northern District of Illinois offers a relatively geographically central and accessible forum for this litigation.").

    3.    Judge David H. Coar of the Northern District of Illinois Is Qualified to Oversee This Litigation.

    The complexity of these issues favors consolidation for pretrial proceedings before a single district judge capable of devoting the judicial resources necessary to develop, understand, and manage these issues during the course of the litigation. *See In re Paxil*, 296 F. Supp. 2d at 1375 (transferring complex products liability litigation to "a seasoned jurist in a district with the time and capacity to handle" the litigation).[6]  Judge David H. Coar of the Northern District of Illinois is exactly this type of judge. He was appointed to the federal bench in 1994 and has a wealth of experience overseeing complex civil litigation. Indeed, by Moving Defendants' count, he has decided class certification in more than two dozen cases. Judge Coar also offers previous experience as an MDL judge: he currently presides over two sets of cases consolidated by the JPML. *See, e.g., In re Sulfuric Acid Antitrust Litig.*, 2007 WL 898600 (N.D. Ill. Mar. 21, 2007), and *In re JP Morgan Chase & Co. Sec. Litig.*, 452 F. Supp. 2d 1350 (J.P.M.L. 2006). His current caseload of approximately 533 open cases is manageable when compared to the other district judges presiding over Aqua Dots cases.[7]

---

[6]    *See also, e.g., In re. Bextra and Celebrex Prods. Liab. Litig.*, 2005 WL 2206577 at *2 (transferring complex products liability litigation to "a jurist experienced in complex multidistrict litigation and sitting in a district with the capacity to handle this litigation"); *In re Vioxx*, 360 F. Supp. 2d at 1354 (same); *In re Silica Prods. Liab. Litig.*, 280 F. Supp. 2d at 1383 (transferring complex products liability litigation to "an experienced transferee judge for multidistrict litigation . . . with a relatively low caseload").

[7]    By Moving Defendants' count, Judge Jordan (*Bertanowski*, in S.D. Fla.) presides over approximately 676 open cases; Judge Fish (*Botsch*, in N.D. Texas) has approximately 542 open cases; Judge Dorr (*Burgess*, in W.D. Mo.) has approximately 590 open cases; Judge Morrow (*Cosgrove*, in C.D. Cal.) has approximately 840 open cases on her docket; Judge Holmes (*Erbach*, in E.D. Ark., discussed *infra*), presides over approximately 474 open cases; and Judge Anderson (*Soderstedt*, in C.D. Cal.) has approximately 675 open cases.

8

**B.    The Eastern District of Arkansas Is Also an Appropriate Transferee Court for This Litigation.**

    1.    <u>Chief Judge J. Leon Holmes of the Eastern District of Arkansas Is Qualified and Available To Oversee This Litigation.</u>

As noted above, this litigation presents the type of complex product liability class action claims that call for a judge capable of devoting the time and resources required to manage it. Chief Judge J. Leon Holmes of the Eastern District of Arkansas is well-qualified to handle such litigation. Appointed to the federal bench in 2004, Judge Holmes has demonstrated legal knowledge, skills and abilities in numerous cases and is highly regarded by members of the Arkansas bar. Moreover, Judge Holmes appears to have the space on his docket to handle this MDL. His current caseload consists of approximately 474 civil cases, which appears particularly manageable when compared to the civil caseload borne by his brethren overseeing Aqua Dots cases in other districts. (*See supra.*)

    2.    <u>A Material Number of the Parties and Witnesses Are Located In or Near the Eastern District of Arkansas</u>

Arkansas is the center of gravity for the named plaintiffs. One of the named plaintiffs is an Arkansas resident, and three others reside in the neighboring states of Missouri, Texas, and Oklahoma. One action was filed in Arkansas; two were filed in neighboring states; and a fourth, in Illinois, was filed in a two-state radius. In addition, from a geographic standpoint, the Eastern District of Arkansas is central. In fact, this Panel has previously noted the Eastern District of Arkansas' geographically central location. *See In re Prempro Prods. Liab. Litig.*, 254 F. Supp. 2d 1366, 1368 (J.P.M.L. 2003) ("Given the range of locations of parties and witnesses in this docket and the geographic dispersal of current and anticipated constituent actions, it is clear that a wide array of suitable transferee districts presents itself. In concluding that the Eastern District of Arkansas is an appropriate forum for this docket, we note

9

that the Arkansas district, where one constituent action is already pending, is a geographically central district equipped with the resources that this complex docket is likely to require.").

3.  The Eastern District of Arkansas Is Readily Accessible to Parties, Witnesses, and Counsel.

As noted above, the parties, witnesses, and attorneys involved in these cases are scattered across the United States and in Toronto, Ontario, Canada. Little Rock, the capital of Arkansas, enjoys the full service of virtually every major domestic air carrier, with non-stop service available to many major metropolitan areas, including New York, Chicago, Atlanta, Dallas, Houston, Denver, Memphis, Kansas City, Minneapolis, and Washington, D.C.[8] *See In re Prempro Prods. Liab. Litig.*, 254 F. Supp. 2d 1366, 1368 (J.P.M.L. 2003). On the other hand, this district is less convenient for Toronto-based Moving Defendant Spin Master, Ltd.

4.  The Eastern District of Arkansas Is Well-Equipped to Accept Transfer.

The Eastern District of Arkansas has just opened a $65 million annex to its federal courthouse. Thanks in no small part to this addition, the Eastern District's Richard Sheppard Arnold courthouse is a state-of-the-art facility that is perfectly suited for complex litigation such as this, with a dozen flat-screen monitors in the courtrooms and the litigation technology to match. Indeed, even before the renovation, this Panel recognized the capability of the Eastern District of Arkansas to oversee complex consolidated litigation. *See In re Prempro Prods. Liab. Litig.*, 254 F. Supp. 2d 1366, 1368 (J.P.M.L. 2003).

## CONCLUSION

Because the named plaintiffs and defendants in these cases are not centralized in any one particular jurisdiction, Moving Defendants suggest two options for the consolidation and

---

[8] *See* Little Rock National Airport Airline Information, available at http://www.lrn-airport.com/airlines/nonstop_service.asp (citing cities served by non-stop flights out of Little Rock).

10

coordination of the pretrial proceedings of these seven cases. Judge Holmes' state-of-the-art courtroom in the Eastern District of Arkansas is geographically central for four of the seven named plaintiffs, who reside either in Arkansas or in an adjacent state. On the other hand, Judge Coar's Chicago courtroom in the Northern District of Illinois is also centrally located and is closest to Canadian Moving Defendant Spin Master, Ltd. These two judges have the lightest current caseloads of the seven judges to whom these cases have been assigned, both are recognized for their legal abilities and case management skills, and either would be a fine judge to oversee the Aqua Dots litigation.

For the foregoing reasons, Moving Defendants respectfully request that this Panel issue an Order transferring these actions pursuant to 28 U.S.C. § 1407 for pretrial coordination and consolidation for pretrial proceedings either to Judge Coar of the Northern District of Illinois or to Judge Holmes of the Eastern District of Arkansas.

11

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

BY _Laurel J Harbour_

John K. Sherk, MO #35963
Laurel J. Harbour, MO #25995
Andrew D. Carpenter, MO #47454

2555 Grand Blvd.
Kansas City, Missouri 64108-2613
Telephone (816) 474-6550
Facsimile (816) 421-5547
jsherk@shb.com
lharbour@shb.com
acarpenter@shb.com

Ronald Y. Rothstein, IL #06225965
Thomas J. Wiegand, IL #06193512
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone (312) 558-5947
Facsimile (312) 558-5700
rrothstein@winston.com
twiegand@winston.com

ATTORNEYS FOR MOVING DEFENDANTS
SPIN MASTER, LTD. AND SPIN MASTER,
INC. AND DEFENDANT TARGET
CORPORATION

12

# Exhibit

# 4

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In Re: Aqua Dots Litigation | :      MDL Docket No. _____ |

## SCHEDULE OF ACTIONS

| Case Caption | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiffs:** <br> Donald C. Erbach, Jr.; Stephanie S. Streett <br> **Defendants:** <br> Spin Master, Ltd.; Spin Master, Inc. | E.D. Arkansas (Western Division) | 4-07-CV-01112 | J. Leon Holmes |
| **Plaintiff:** <br> Sandra I. Soderstedt <br> **Defendants:** <br> Moose Enterprise Pty Ltd.; Spin Master, Ltd.; Spin Master, Inc.; Does 1 through 10 | C.D. California | CV07-07546 | Percy Anderson |
| **Plaintiffs:** <br> Kim A. Cosgrove <br> **Defendants:** <br> Spin Master, Ltd.; Spin Master, Inc.; Moose Enterprises | C.D. California | CV07-07544 | Margaret Morrow |
| **Plaintiffs:** <br> Simon Bertanowski; Sara Bertanowski; Anthony B. White <br> **Defendants:** <br> Moose Enterprise Pty Ltd.; Spin Master, Ltd.; Spin Master, Inc.; Target Corp. | S.D. Florida | 07-22941 | Adalberto Jordan |
| **Plaintiffs:** <br> Robyn Williams <br> **Defendants:** <br> Spin Master, Ltd. | N.D. Illinois | 07CV6387 | David H. Coar |
| **Plaintiffs:** <br> Michael J. Burgess <br> **Defendants:** <br> Spin Master, Ltd. | W.D. Missouri (Central Division) | 3:07-cv-05110 | Richard E. Dorr |
| **Plaintiffs:** <br> Eric K. Botsch <br> **Defendants:** <br> Spin Master, Ltd.; Spin Master, Inc. | N.D. Texas (Dallas Division) | 07 CV 1948 | A. Joe Fish |

A courtesy copy of the complaints in each of these cases is attached hereto.

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

BY _Laurel J Harbour_

John K. Sherk, MO #35963
Laurel J. Harbour, MO #25995
Andrew D. Carpenter, MO #47454

2555 Grand Blvd.
Kansas City, Missouri 64108-2613
Telephone (816) 474-6550
Facsimile (816) 421-5547
jsherk@shb.com
lharbour@shb.com
acarpenter@shb.com

Ronald Y. Rothstein, IL #06225965
Thomas J. Wiegand, IL #06193512
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone (312) 558-5947
Facsimile (312) 558-5700
rrothstein@winston.com
twiegand@winston.com

ATTORNEYS FOR MOVING DEFENDANTS
SPIN MASTER, LTD. AND SPIN MASTER,
INC. AND DEFENDANT TARGET
CORPORATION

2

# Exhibit

# 5

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

In Re: Aqua Dots Litigation              :        MDL Docket No. _____

: 

: 

## CERTIFICATE OF SERVICE

      I hereby certify that a hard copy of Moving Defendants' Motion for Consolidation and Transfer for Pretrial Proceedings Pursuant to 28 U.S.C. § 1407, Brief in Support, Schedule of Actions, and this Certificate of Service was served by First Class Mail on January 22, 2008, to the following:

      Alex G. Streett
      James A. Streett
      STREETT LAW FIRM, P.A.
      107 West Main
      Russellville, Arkansas 72811

      **Counsel for Plaintiffs: Donald C. Erbach, Jr., et al.**, E.D. Arkansas, No. 4-07-
           CV-01112

      Rosemary M. Rivas
      FINKELSTEIN THOMPSON LLP
      100 Bush Street, Suite 1450
      San Francisco, California 94101

      Mila F. Bartos
      Tracy Rezvani
      Karen J. Marcus
      Rosalee B. Connell
      FINKELSTEIN THOMPSON LLP
      1050 30th Street NW
      Washington, DC 20007

      **Counsel for Plaintiff: Sandra I. Soderstedt**, C.D. California, No. CV07-07546

      Laurence D. King
      Linda M. Fong
      KAPLAN FOX & KILSHEIMER LLP
      350 Sansome Street, Suite 400
      San Francisco, California 94104

1

Lori S. Brody
KAPLAN FOX & KILSHEIMER LLP
1801 Century Park East, Suite 1460
Los Angeles, California 90067

Frederic S. Fox
Donald R. Hall
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, New York 10022

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
820 North Boulevard, Suite B
Oak Park, Illinois 60301

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101

**Counsel for Plaintiff: Kim A. Cosgrove**, C.D. California, No. CV07-07544

Paul J. Geller
Jack Reise
Stuart A. Davidson
James L. Davidson
Elizabeth A. Shonson
COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432-4809

John J. Stoia, Jr.
Rachel L. Jensen
COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, California 92101

Adam Balkan
John Patterson
BALKAN & PATTERSON, LLP
601 South Federal Highway, Suite 302
Boca Raton, Florida 33432

**Counsel for Plaintiffs: Simon Bertanowski, et al.**, S.D. Florida, No. 07-22941

2

Ben Barnow
Sharon Harris
Erich Schork
BARNOW AND ASSOCIATES, P.C.
One North La Salle Street, Suite 4600
Chicago, Illinois 60602

Aron D. Robinson
THE LAW OFFICE OF ARON D. ROBINSON
19 South LaSalle Street, Suite 1300
Chicago, Illinois 60603

Scott R. Tack
ALLEN ALLEN & TACK
P.O. Box 1409
210 Chickasha Avenue
Chickasha, Oklahoma 73023

Lance A. Hark, P.A.
Sara Clasby Engel, P.A.
HARKE & CLASBY LLP
155 South Miami Avenue, Suite 600
Miami, Florida 33130

**Counsel for Plaintiff: Robyn Williams**, N.D. Illinois, No. 07CV6387

Ralph K. Phalen
RALPH K. PHALEN ATTY. AT LAW
1000 Broadway, Suite 400
Kansas City, Missouri 64105

David Spencer
MCGONAGLE SPENCER, P.C.
105 East 5th Street, Suite 302
Kansas City, Missouri 64106

Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North La Salle Street, Suite 4600
Chicago, Illinois 60602

**Counsel for Plaintiff: Michael J. Burgess**, W.D. Missouri, No. 3:07-cv-05110

Keith E. Patton
SCHMIDT & CLARK

3

2911 Turtle Creek Boulevard, Suite 1400
Dallas, Texas 75219

William N. Riley
Christopher A. Moeller
Joseph N. Williams
PRICE WAICUKAUSKI & RILEY
301 Massachusetts Avenue
Indianapolis, Indiana 46204

**Counsel for Plaintiff: Eric K. Botsch**, N.D. Texas, 07 CV 1948

Moose Enterprises Pty Ltd.
7-13 Ardena Court
East Bentleigh
Melbourne VIC 3165
AUSTRALIA

**Defendant Moose Enterprises Pty Ltd.**

I further certify that a copy of the Motion for Consolidation and Transfer for Pretrial Proceedings Pursuant to 28 U.S.C. § 1407, Brief in Support, Schedule of Actions, and this Certificate of Service were filed by ECF on January 22, 2008, thereby notifying the above-named counsel and the following district courts in which the seven subject actions are pending:

Clerk, Eastern District of Arkansas

Clerk, Central District of California

Clerk, Southern District of Florida

Clerk, Northern District of Illinois

Clerk, Western District of Missouri

Clerk, Northern District of Texas

4

SHOOK, HARDY & BACON L.L.P.

BY: _Laurel J Harbour_

John K. Sherk, MO #35963
Laurel J. Harbour, MO #25995
Andrew D. Carpenter, MO #47454

2555 Grand Blvd.
Kansas City, Missouri 64108-2613
Telephone (816) 474-6550
Facsimile (816) 421-5547
jsherk@shb.com
lharbour@shb.com
acarpenter@shb.com

Ronald Y. Rothstein, IL #06225965
Thomas J. Wiegand, IL #06193512
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone (312) 558-5947
Facsimile (312) 558-5700
rrothstein@winston.com
twiegand@winston.com

ATTORNEYS FOR MOVING DEFENDANTS
SPIN MASTER, LTD. AND SPIN MASTER,
INC. AND DEFENDANT TARGET
CORPORATION

2764521v1