# EXHIBIT A

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ROBYN WILLIAMS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 07 CV 6387 |
| SPIN MASTER, LTD., a Canadian Corporation, | ) ) ) | Hon. David H. Coar |
| Defendants. | ) ) | |
| SAMANTHA FORD, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, vs. | ) ) ) | No. 08 CV 0804 |
| SPIN MASTER, LIMITED, SPIN MASTER INCORPORATED; and DOES 1 though 10, | ) ) ) | Hon. Amy St. Eve |
| Defendants. | ) | |

## NOTICE OF MOTION

TO:    See attached Service List.

PLEASE TAKE NOTICE that on March 13, 2008, at 9:00 a.m., I shall appear before Honorable David H. Coar in Courtroom 1419 of the United States District Courthouse, 219 South Dearborn Street, Chicago, Illinois, and then and there present Plaintiff Samantha Ford's **MOTION FOR REASSIGNMENT OF FORD V. SPIN MASTER, LTD., et al., AS A RELATED CASE**, a copy of which is herewith served upon you.

s/       William J. Harte

William J. Harte
WILLIAM J. HARTE, LTD.
111 West Washington Street, Suite 1100
Chicago, IL 60602-2705
(312) 726-5015

*Of Counsel:*

Mila F. Bartos
Tracy Rezvani
Karen J. Marcus
Rosalee B. Connell
**FINKELSTEIN THOMPSON LLP**
The Duval Foundry
1050 30th Street NW
Washington, D.C. 20007
Telephone:  (202) 337-8000

*Williams v. Spin Master, Ltd.*, No. 07 CV 06387

## <u>SERVICE LIST</u>

Thomas J. Wiegand
Ronald Y. Rothstein
Bryna Joyce Roth Dahlin
WINSTON & STRAWN
35 West Wacker Drive
Chicago, IL 60601-9703

Ben Barnow
Erich P. Schork
Sharon Harris
BARNOW & ASSOCIATES, P.C.
One North LaSalle Street
Suite 4600
Chicago, IL 60603

Aron D. Robinson
Law Office of Aron D. Robinson
19 South LaSalle Street
Suite 1300
Chicago, IL 60603

## CERTIFICATE OF SERVICE

William J. Harte, an attorney, certifies that he caused the foregoing Notice of Motion and Plaintiff Samantha Ford's **MOTION FOR REASSIGNMENT OF FORD V. SPIN MASTER, LTD., et al., AS A RELATED CASE** to be served upon:

>  Thomas J. Wiegand
>  Ronald Y. Rothstein
>  Bryna Joyce Roth Dahlin
>  WINSTON & STRAWN
>  35 West Wacker Drive
>  Chicago, IL 60601-9703
>
>  Ben Barnow
>  Erich P. Schork
>  Sharon Harris
>  BARNOW & ASSOCIATES, P.C.
>  One North LaSalle Street
>  Suite 4600
>  Chicago, IL 60603
>
>  Aron D. Robinson
>  Law Office of Aron D. Robinson
>  19 South LaSalle Street
>  Suite 1300
>  Chicago, IL 60603

in accordance with the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers on March 7, 2008.

s/       William J. Harte

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

_____

ROBYN WILLIAMS, individually and
on behalf of all others similarly situated,

               Plaintiff,

     vs.

SPIN MASTER, LTD., a Canadian
Corporation,

               Defendants.

**Case No.: 07 CV 6387**

**The Honorable David H. Coar**

_____

SAMANTHA FORD, on behalf of herself and
all others similarly situated,

               Plaintiff,

     vs.

SPIN MASTER, LIMITED; SPIN MASTER,
INCORPORATED; and DOES 1 through 10,

               Defendants.

**Case No.: 08 CV 0804**

**The Honorable Amy J. St. Eve
Magistrate Judge Martin C. Ashman**

_____

# MOTION FOR REASSIGNMENT OF
## _FORD V. SPIN MASTER, LTD., et al._ AS A RELATED CASE

     Pursuant to LR40.4(c), Plaintiff Samantha Ford ("Plaintiff") in _Ford v. Spin Master, Ltd. et al.,_ Case No. 08- CV-0804 (N.D. Ill.), attached hereto as _Exhibit A_, respectfully moves this Court for an Order finding her case related to earlier-filed case _Williams v. Spin Master, Ltd.,_ Case No. 07-CV-6387 (N.D. Ill.), attached hereto as _Exhibit B_, pending before the Honorable David H. Coar and reassigning this related action to Judge Coar. Before submitting this motion, Plaintiff conferred with defense

counsel and consent could not be obtained. In accordance with the custom in the Northern District of Illinois, Plaintiff will provide a courtesy copy of this motion to the Honorable Amy J. St. Eve, the judge presiding over Plaintiff's case in the Northern District of Illinois. In support of this motion, Plaintiff states as follows:

1.      *Ford* meets all four of the necessary conditions for reassignment. Once relatedness is established, under LR40.4(b) the case or cases may be reassigned to the calendar of a judge with an earlier-numbered case if all of the following criteria are met: (1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and (4) the cases are susceptible of disposition in a single proceeding. *Murry v. America's Mortgage Banc., Inc.*, 2004 U.S. Dist. LEXIS 3148, at *5 (N.D. Ill. Mar. 1, 2004); LR40.4(b).

2.      On a motion for reassignment, the movants are obligated to specifically articulate reasons why each of the four conditions for reassignment under LR40.4(b) is met. *Jaffe v. Household Int'l, Inc.*, 2003 U.S. Dist. LEXIS 7466, at *10-11 (N.D. Ill. May 5, 2003). In this instance, each of the four criteria is clearly met.

3.      First, both cases are currently pending in the Northern District of Illinois.

4.      Second, the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort. Such duplicative judicial efforts have already occurred as Judge Coar has already ruled on a motion to stay in the *Williams* case that is identical to the motion to stay pending in the *Ford* case. Reassignment will mean that only one judge will have to rule on the same legal issues, and only one judge will

have to develop the expertise necessary to rule on the common legal issues. This magnitude of savings of judicial time and effort is more than sufficient to meet the LR40.4(b) standard.

5.      Third, neither case has reached a point where reassignment of the case identified herein would cause any delay. The defendant has not filed its answer in either case. Furthermore, although the parties in *Williams* had a Rule 26(f) Planning Meeting; the plaintiff in *Williams* has served discovery requests on Defendants; the *Williams* case has produced two separate affidavits by Spin Master, Limited promising not to destroy any documents relevant to this matter; and Judge Coar has Ordered a stay in the *Williams* action until March 26, 2008, Judge Coar has advanced the *Williams* case in the same interest of Plaintiff, and Plaintiff will not be prejudiced by the relation of these two cases. *Fairbanks Capital Corp. v. Jenkins*, 2002 U.S. Dist. LEXIS 26297, at *8 (N.D. Ill. Dec. 3, 2002)("the first of the cases to be filed . . . has not progressed all that far: the Court has ruled on a motion to dismiss the counterclaim, and discovery has just gotten started"). Further it is likely that both cases will be transferred to the Aqua Dots Litigation MDL.

6.      Fourth, *Ford* and *Williams* are susceptible of disposition in a single proceeding as the complaints are identical and the defenses are expected to be identical. *Applied Web Systems, Inc., v. Catalytic Combustion Corp.*, 1991 U.S. Dist. LEXIS 5696, at *5-6 (N.D. Ill. Apr. 29, 1991) ("The complaints filed... are virtually identical and [defendant's] defenses in both cases are identical. The only difference between [the two cases] is that each involves a different . . . customer. . . Although this case contains one additional count which is not included in the [other] case, both cases unquestionably will share common issues of law and fact").

3

7.      *Ford* and *Williams* involve the same issues of fact and law, arise out of the same transaction or occurrence, and/or involve one or more of the same classes.  Both cases seek class certification for Defendant Spin Master, Limited's violations of Illinois' U.C.C. statute for Breach of Implied Warranty because Defendant Spin Master, Limited knew or should have known that the children's toy – Aqua Dots, manufactured, distributed and/or sold by Defendant Spin Master, Limited, were dangerous to children and could not safely be used for their ordinary purpose.

8.      Further, the Class Periods are essentially identical.  Any resolution of one case would control the resolution of the other.  For these reasons, this Court should find the actions identified above related.  *See, e.g.*, *Murry*, 2004 U.S. Dist. LEXIS 3148, at *6 (holding that "any resolution . . . will necessarily require a determination of the legality of the same defendants' actions under the same statutes and regulations").

9.      Re-assignment will also help ensure uniformity in the administration of justice in all of the cases.  For this reason, the Seventh Circuit has expressed a preference that cases that are similar be consolidated before the same judge to avoid disparate decisions and multiple appeals.  *See Smith v. Check-N-Go of Ill., Inc.*, 200 F.3d 511, 513 (7th Cir. 1999); *Gibson v. Bob Watson Chevrolet-GEO, Inc.,* 112 F.3d 283, 284 (7th Cir. 1997); and *Southmark Corp. v. Cagan,* 950 F.2d 416, 419 (7th Cir. 1991).

WHEREFORE, Plaintiff Samantha Ford respectfully requests that this Court enter an Order finding *Ford v. Spin Master, Ltd. et al.,* 08 CV0804 related to *Williams v. Spin Master, Ltd.,* 07 CV6387, reassigning this case to Judge Coar and granting any other or further relief that the Court deems just.

Respectfully submitted,


s/   William J. Harte
William J. Harte
**WILLIAM J. HARTE LTD.**
111 West Washington Street
Suite 1100
Chicago, Illinois 60602
Telephone:  (312) 726-5015
Facsimile:  (312) 641-2455

*Attorney for Plaintiff Samantha Ford*

*Of Counsel:*

Mila F. Bartos
Tracy Rezvani
Karen J. Marcus
Rosalee B. Connell
**FINKELSTEIN THOMPSON LLP**
The Duval Foundry
1050 30th Street NW
Washington, D.C. 20007
Telephone:  (202) 337-8000

EXHIBIT A

FILED

FEBRUARY 6, 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

08 C 804

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SAMANTHA FORD, on behalf of herself and all others similarly situated, | **JUDGE ST. EVE**<br>**MAGISTRATE JUDGE ASHMAN**<br><br>Case No.: _____ |
| Plaintiff,<br><br>vs. | **CLASS ACTION COMPLAINT** |
| SPIN MASTER, LIMITED; SPIN MASTER, INCORPORATED; and DOES 1 through 10, | **J. N.** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff, Samantha Ford, by and through her attorneys, based on her individual experience and the investigation of counsel, on behalf of herself and all those similarly situated, alleges the following:

## I. NATURE OF THE CASE

1. This action is brought by Plaintiff on behalf of herself and all those similarly situated. This action, brought on behalf of Illinois statewide residents and residents nationwide, seeks declaratory and injunctive relief on behalf of the Plaintiff and class members ("Class") who purchased the Chinese-made "Aqua Dots" toys designed, manufactured, distributed, marketed and/or sold by Defendants Spin Master, Limited, and Spin Master, Incorporated between April 2007 and November 2007.

2. On November 7, 2007, the United States Consumer Product Safety Commission ("CPSC") announced that the coating on the Aqua Dots beads contains butanediol – a chemical that can be converted to the "date rape" drug gamma-hydroxy butyrate ("GHB"). The butanediol coating on Aqua Dots can turn toxic when the beads are ingested and metabolized. Children who swallow the beads can become comatose, develop respiratory depression, vomit, have seizures or possibly die. About 4.2 million Aqua Dots products have been sold through mass merchandisers nationwide and

internationally.  According to the CPSC, the toys should be immediately taken away from children.

3.      Upon information and belief, the only remedy available for consumers who return the Aqua Dots toy to Defendants is a free replacement of the beads or a toy of equal value.  Defendants are not offering a refund to consumers who return the product to Defendants as a result of the recall.  Additionally, retailers may or may not offer a refund to consumers who return the product as a result of the recall.

4.      As a result of Defendants' conduct, Plaintiff and the Class have suffered injury-in-fact and have lost money and/or property.  Plaintiff and the Class seek equitable relief, including permanently enjoining Defendants from engaging in the unlawful activities and practices complained of herein; an order requiring Defendants to implement safety systems such as third-party laboratory testing of all products imported from China and requiring Defendants to disclose the identity of the supplier responsible for coating Aqua Dots with the chemical that converts to GHB; and an order requiring Defendants to stop their current recall and implement a full recall with reasonable procedures that allow Plaintiff and the Class to easily participate in the recall; injunctive relief as described herein; and disgorgement of profits as described herein on behalf of Plaintiff and the Class.

## II.    JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a)(2) because the suit is between a citizen of a state and a subject of a foreign state, and 28 U.S.C. § 1332(d) because Plaintiff and Class members are of diverse citizenship from one or more Defendants; there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000.  This Court also has personal jurisdiction over Defendants because Defendants are authorized to do business and in fact do business in this State, and Defendants have sufficient minimum contacts with this State

and otherwise intentionally avail themselves of the markets in this State through the distribution, promotion, marketing and sale of its products in this State, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

6.      Venue is proper in this District under 28 U.S.C. §1391.  The claims asserted in this Complaint arise, in part, within this District.  A substantial part of the events and conduct giving rise to the violations of law complained of herein occurred or emanated from this District.  Additionally, Defendant Spin Master Limited is a foreign corporation. Defendants also conduct business with consumers in this District and have caused injury to Illinois residents.

### III.    THE PARTIES

7.      Plaintiff Samantha Ford ("Plaintiff") is the mother of a minor child.  Plaintiff purchased Aqua Dots Super Studio as a gift for her child on September 29, 2007. Plaintiff is a resident of Cook County, Illinois.

8.      Defendant Spin Master, Limited ("Spin Master, Ltd."), is a foreign business entity of unknown structure having its principal place of business at 450 Front Street West, Toronto, ON M5V1B6 Canada.  Spin Master, Ltd., distributes, markets, promotes and sells merchandise including Aqua Dots in the State of Illinois and nationwide. Defendant Spin Master, Ltd., conducts substantial business in the State of Illinois.  At all relevant times, Spin Master, Ltd., acted by and through its agents, servants, workers, employees, officers and directors, all of whom were acting through the course and scope of their actual and apparent authority, agency, duties or employment.

9.      Defendant Spin Master, Incorporated ("Spin Master, Inc."), is a Delaware corporation with its principal place of business and headquarters located at 300 International Drive, Suite 300, Williamsville, New York 14221.  Spin Master, Inc., is a wholly-owned subsidiary of Defendant Spin Master, Limited.  Upon information and belief, Defendant Spin Master, Inc., distributes, markets, promotes and sells merchandise

including Aqua Dots in the State of Illinois and nationwide. Spin Master, Inc., conducts substantial business in the State of Illinois. At all relevant times, Spin Master, Inc., acted by and through its agents, servants, workers, employees, officers and directors, all of whom were acting through the course and scope of their actual and apparent authority, agency, duties or employment.

10.     Doe Nos. 1 through 10 are persons and/or entities that are or were complicit in the scheme alleged herein. The true identities of Does are currently not known to Plaintiff. Plaintiff seeks to amend this complaint after the actual identities of Does are discovered.

11.     Defendants Spin Master, Ltd., and Spin Master, Inc., are herein referred to collectively as "Defendants."

### IV.     CO-CONSPIRATOR AND AGENCY ALLEGATIONS

12.     Various other persons, firms, and corporations, the identities which are presently unknown, have participated as co-conspirators with Defendants in the violations alleged herein and have performed acts and made statements in furtherance thereof.

13.     The facts alleged herein have been committed by Defendants and their co-conspirators, or were authorized, ordered or done by their respective officers, agents, employees, or representatives while actively engaged in the management of each Defendant's business or affairs.

14.     Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein for the purpose of enriching themselves at the expense of consumers, resulting in damages to Plaintiff and the Class.

## V.    FACTUAL ALLEGATIONS

### A.  Aqua Dots Toys

15.    The Aqua Dots toy is a craft kit which allows children to create various multi-dimensional designs.

16.    These toys, sold under brand names including Aqua Dots and Aqua Beads, contain packets of brightly colored beads that children arrange into mosaics, then sprinkle with water; the beads then fuse together in as little as ten minutes to form durable artworks.

17.    The product is available in various different kits with accessories such as a drying fan, applicator pen, design templates for the beads, and spray bottle.  The products are marketed to children ages 4 and over.

18.    The Aqua Dots toys were sold at prices ranging from $17 to as much as $30.

19.    Defendants manufacture, distribute, market, promote and sell merchandise including Aqua Dots in the State of Illinois and nationwide.

20.    The toys identified in Paragraphs 15 and 19 are hereinafter referred to as "Aqua Dots".


### B.    Ingestion of GHB Has Harmful Effects on Young Children

21.    GHB is an odorless, colorless liquid that acts on the central nervous system as a depressant/anesthesia.  *See http://www.nida.nih.gov/Infofacts/RohypnolGHB.html.*

22.    GHB is naturally found in the human nervous system as well as in citrus fruits and wine.  Small doses are considered safe and are used to treat alcoholism, as a weight loss tool, a sedative and general anesthetic.
*See http://www.injuryboard.com/newspost.aspx?id=28376&googleid=28376.*

23.    Butanediol is a solvent, commonly used as a raw material in factories to manufacture some types of plastics and is converted into GHB after human ingestion. *See id.*

5

24.     The Food and Drug Administration ("FDA") in 1999 declared butanediol a

Class I Health Hazard, meaning it can cause life-threatening harm.

*See http://www.cnn.com/2007/US/11/08/toys.daterapedrug.ap/index.html.*

25.     The Federal Hazardous Substance Act, 15 U.S.C. §1261(f)(1), defines

household products that are toxic as "hazardous substances".  Toys that are intended for

use by children and that contain a hazardous substance in such a manner to be susceptible

to access to children are automatically banned under 15 U.S.C. §1261(q).

26.     Butanediol is manufactured in China and elsewhere, including major

multinational companies, and is also marketed over the Internet.  *See id.*

27.     The most common effects of GHB after human ingestion include: euphoria,

amnesia, intoxication, drowsiness, dizziness, nausea, amnesia, visual hallucinations,

hypotension, brady-cardia, severe respiratory depression, and coma.  In lower doses the

most common side effects are: drowsiness, nausea, and hallucinations.  In higher doses

the most common side effects are: unconsciousness, seizures, severe respiratory

depression, coma or death.

*See http://teenadvice.about.com/library/weekly/aa062502d.htm.*

28.     The FDA prohibited the sale and manufacture of GHB under the *Samantha*

*Reid Date-Rape Prohibition Act of 2000*.  Since then, GHB is associated with a more

clandestine popularity as an illicit drug, particularly in the southeastern and western U.S.

It currently is prevalent in the dance music scene (at raves and nightclubs) as an

alternative to "ecstasy" and amphetamines.  GHB often is used in conjunction with

alcohol.  It has been implicated as a "date rape" drug.

*See http://www.emedicine.com/emerg/topic848.htm.*

29.     According to the CPSC, the coating on the Aqua Dots beads that causes the

beads to stick to each other when water is added, contains the chemical butanediol that

can turn toxic when the beads are ingested.  Scientists have found the toy's coating, once

metabolized, converts into GHB.

*See http://www.cpsc.gov/cpscpub/prerel/prhtml08/08074.html*.

30.     According to the CPSC, children who swallow the beads can become comatose, develop respiratory depression or have seizures.  The CPSC has received several reports over the past several days of children swallowing the Aqua Dots beads.  A 20-month-old child in the U.S. swallowed several dozen beads.  He became dizzy and vomited several times before slipping into a comatose state for a period of time and was hospitalized.  A second child in the U.S. also vomited and slipped into a comatose state and was hospitalized for five days.  *See id.*

31.      Recently, U.S. officials have raised alarm about products manufactured in China.  Seafood containing harmful drugs, toothpaste with an ingredient found in antifreeze, and pet food containing a chemical used to make plastic came from China to the United States and were the subject of recalls.

### C.     The Discovery of the GHB Conversion in Aqua Dots Toys

32.     In or around early October 2007, three Australian children were hospitalized after ingesting beads from the Bindeez toys, Australia's 2007 Toy of the Year and the Australian version of Aqua Dots.

33.     Two of the children, a two-year old boy and 10-year old girl, swallowed the beads and were both admitted to a Sydney, Australia hospital.  The third child, a 19-month old was also receiving medical help after ingesting the Bindeez beads.

34.     A biochemical geneticist, Dr. Kevin Carpenter in Sydney, Australia, identified the problem when the first Australian boy was hospitalized.  Australian doctors at Children's Hospital at Westmead first thought the boy had a genetic disorder or was given illegal drugs by a family member.  But Dr. Carpenter, using a mass spectrometer, said he saw a large peak of a "substance I didn't recognize."  A urine sample found GHB.  After two days, the compound dissipated from the boy's system confirming the symptoms were not genetic.  *See*

*http://www.nytimes.com/2007/11/08/business/worldbusiness/08recall.html?ex=13522644*
*00&en=3f5ba1b256983b9e&ei=5088&partner=rssnyt&emc=rss*

35.     On or around October 8, 2007, Dr. Carpenter contacted Moose Enterprise
PTY Limited of Australia, who referred him to the Moose Enterprise's Hong Kong
office.  The manufacturer provided Dr. Carpenter a list of the beads' ingredients.  The list
did not include the dangerous industrial chemical.  Dr. Carpenter said the manufacturer
was reluctant to provide details of how the beads were made.  "The manufacturer was
very keen that Moose not know what was in them," apparently to prevent Moose from
ordering identical beads from another manufacturer, Dr. Carpenter said.  *Id.*

36.     On November 2, 2007, Dr. Carpenter alerted the Ministry of Fair Trading of
New South Wales in Sydney.  On the same day, the hospital's poison control center sent
out a warning about the beads to poison centers around Australia.

37.     On November 3, 2007, a mother living near Dr. Carpenter's hospital found
her 10-year-old daughter motionless.  Then the girl began vomiting beads.  At the
hospital's poison control center, doctors recognized the symptoms immediately.  "Both
the children presented with a coma and seizure-like movements," said Dr. Naren Gunja,
the deputy director of the center.  *See id.*

38.     On November 6, 2007, Moose Enterprise ordered a recall of Bindeez beads in
Australia.  Dr. Carpenter said safety regulators should look beyond Bindeez to conduct
laboratory tests on all similar craft toys.

39.     On November 7, 2007, Peter Mahon, a Moose Enterprise spokesman, said the
company had ordered safety tests on Bindeez beads sold in more than 40 other countries,
including the U.S., but that it was awaiting results before deciding whether to expand its
recall beyond Australia.  But Amazon's British Web site, Amazon.co.uk, abruptly
stopped listing Bindeez products for sale.  Toys LiFung (Asia) of Hong Kong said that it
had removed all Bindeez items from the Toys "R" Us stores that it operates in Hong
Kong, Singapore and Malaysia.

40.     The Aqua Dots toys were supposed to be made using 1,5-pentanediol, a nontoxic compound found in glue, but instead contained the harmful 1,4-butanediol, which is widely used in cleaners and plastics.

*See http://www.cnn.com/2007/US/11/08/toys.daterapedrug.ap/index.html.*

41.     Moose Enterprise said that it reviewed the ingredients of the beads and found that some batches did not match the list of ingredients promised by the supplier.  "The substitution was not at any time approved by Moose, nor was Moose made aware of any substitution by the supplier," the company said in a statement, adding that it would add a safe but foul-tasting ingredient to future beads to discourage children from eating them. Moose Enterprise declined to identify the supplier.

42.     Although it is not clear why 1,4-butanediol was substituted, it should be noted that there is a significant price difference between butanediol and pentanediol.  The Chinese online trading platform ChemNet China lists the price of 1,4-butanediol at between about $1,350-$2,800 per metric ton, while the price for 1,5-pentanediol (the chemical that should have been used) is about $9,700 per metric.

*See http://www.cnn.com/2007/US/11/08/toys.daterapedrug.ap/index.html.*

43.     Bindeez has since been pulled from store shelves in Australia.

44.     China's General Administration of Quality Supervision, Inspection and Quarantine (AQSIQ) said the Bindeez toys were manufactured by the Wangqi Product Factory in China's southern city of Shenzhen.

45.     On November 7, 2007, Defendant Spin Master, Ltd., in conjunction with the CPSC, announced a recall of approximately 4.2 million Aqua Dots toys sold in the U.S. between April 2007 and November 2007.

46.     Defendants Spin Master, Ltd., executed the recalls because the coating on the beads, which Defendants designed, manufactured, distributed, marketed and/or sold, and that causes the beads to stick to each other when water is added, converts to GHB that

can turn toxic when many are ingested.  Upon information and belief, the Aqua Dots were also manufactured in Shenzhen in the southern Guangdong province of China.

47.    On November 9, 2007, China banned the export of these toys.

48.    However, according to a December 21, 2007 *US Federal News* article, U.S. Customs and Border Protection officers in Seattle intercepted several large shipments of Aqua Dots toys in the early weeks of December 2007.

49.    According to a November 9, 2007 *The Washington Post* article, Congress is considering legislation to require manufacturers to pay for independent tests by certified labs following the recent recalls of dangerous toys from China.

**D.    Defendants Knew, Or Should Have Known, That Aqua Dots' Coating Converts to GHB**

50.    Defendants knew, or should have known, that the coating on Aqua Dots converts to the illegal GHB substance and presented a serious risk to the health and safety of children.

51.    Defendants, however, failed to adequately screen and test the Aqua Dots imported from China.

52.    Moreover, Defendants ignored recent reports of unsafe products imported from China, including reports of toys containing impermissible and unsafe levels of lead, seafood containing harmful drugs, toothpaste with an ingredient found in antifreeze, and pet food containing a chemical used to make plastic.  These reports followed a recall in November 2006 by Target and the CPSC of 190,000 toys and trucks made in China due to paint containing excessive lead, and a recall in 2005 by Dollar General involving similar circumstances.

E.    **Defendants Failed to Promptly Notify the CPSC Regarding the**
      **Unsafe Nature of Aqua Dots**

53.    Manufacturers, importers, distributors and retailers are required to notify the

CPSC within 24 hours when they discover information relating to a dangerous defect in a

product.

54.    Upon information and belief, Defendants learned about the unsafe nature of

the Aqua Dots on November 4, 2007, when Defendants were notified by the Ministry of

Fair Trading of the problem.

55.    Upon information and belief, Defendants notified U.S. retailers about the

problem on November 7, 2007, approximately three days after discovering GHB in Aqua

Dots or Bindeez toys in Australia.

56.    China's AQSIQ is the only entity that has confirmed that the Aqua Dots toys

were manufactured by the Wangqi Product Factory.  Defendants still have not officially

confirmed the name of their supplier responsible for coating Aqua Dots toys with

butanediol that converts to GHB.  Thus, other toy companies are prevented from knowing

for certain which suppliers to avoid.


F.    **Defendants' Recall  Program Does Not Provide Adequate**
      **Compensation**

57.    Plaintiff and the Class purchased an Aqua Dots toy sometime between April

2007 and November 7, 2007.

58.    Plaintiff purchased Aqua Dots reasonably believing that it was safe for her

child to play with, including the knowledge that children often place toys in their mouths

as well as their hands after coming into contact with the toys, like Aqua Dots, while

playing.

59.    Defendants heavily marketed Aqua Dots to children and touted themselves as

the most trusted named in toys.  Defendants, however, failed to disclose material

information to Plaintiff and the Class, namely, that the Aqua Dots contained a toxic chemical that converts to GHB, and that GHB poses a danger and health risk to children.

60.    Upon information and belief, instead of offering Plaintiff and the Class full refunds of the purchase price paid for the Aqua Dots, Defendants only agree to provide free replacement beads or a toy of equal value.  Retailers may or may not offer full refunds for the purchase of Aqua Dots.  To obtain the replacement beads, Plaintiff and the Class follow onerous procedures.  First, the Plaintiff and the Class must submit an on-line form or call Defendants' recall hotline, and the Defendants will arrange to send a prepaid envelope in order for the purchaser to return the Aqua Dots beads.  Once received by Defendants, Defendants will arrange to send the consumer replacement Aqua Dots beads.

61.    Most consumers, however, will not take the time to submit their contact information on-line due to the onerous procedures and also because most, if not all of Defendants' products, are manufactured in China and may present the same or different safety hazards.  Additionally, when a consumer calls the Aqua Dots recall hotline, the consumer is often placed on hold for a long period of time (in some cases, up to two hours).

62.    As a result of Defendants' actions as alleged herein, Plaintiff and each Class member has suffered injury-in-fact and has lost money and/or property, notwithstanding Defendants' offer to provide replacement beads or a toy of equal value which is inadequate to compensate Plaintiff and the Class.

### VI.    CLASS ACTION ALLEGATIONS

63.    For Counts One and Two, this action is brought as an Illinois statewide class action individually and on behalf of other similarly situated as a class action under Illinois Rule 735 ILCS 5/2-801, on behalf of a class initially defined as:

> All persons throughout the state of Illinois who purchased one or more Aqua Dots between April 1, 2007 through November 7,

2007, and were exposed to the Aqua Dots toys that were manufactured and/or distributed by Defendants subject to the recall announced by the CPSC on November 7, 2007. Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the class definition. Excluded from the Class are Defendants and any entity in which any Defendant has a controlling interest, and their legal representatives, officers, directors, assignees and successors. Also excluded from the Class is any judge or justice to whom this action is assigned, together with any relative of such judge or justice within the third degree of relationship, and the spouse of any such persons.

64.     For Counts Three and Four, this action is brought as a nationwide class action individually and on behalf of others similarly situated as a Class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a class initially defined as:

All persons throughout the United States and its territories who purchased one or more Aqua Dots between April 1, 2007 through November 7, 2007, and were exposed to the Aqua Dots toys that were manufactured and/or distributed by Defendants subject to the recall announced by the CPSC on November 7, 2007. Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the class definition. Excluded from the Class are Defendants and any entity in which any Defendant has a controlling interest, and their legal representatives, officers, directors, assignees and successors. Also excluded from the Class is any judge or justice to whom this action is assigned, together with any relative of such judge or justice within the third degree of relationship, and the spouse of any such persons.

65.     **Numerosity**: Membership in the Class is so numerous it is impractical to bring all Class members before the Court. The identity and exact number of Class members is unknown but can be determined from Defendants. It is estimated to be tens of thousands or more.

66.     **Commonality**:  There are numerous and substantial questions of law and fact common to all of the members of the Class which control this litigation and predominate over any individual issues pursuant to Rule 23(b)(3).  These common issues include, but are not limited to:

a.    Whether Defendants designed, manufactured, marketed and distributed toys containing 1,4-butanediol which can be converted to the toxin GHB when ingested;

b.    Whether Defendants advertised, represented or otherwise presented to the public toys that it manufactures, distributes and sells as safe and high quality;

c.    Whether Defendants falsely represented or omitted material information regarding the tainted toys or their recall;

d.    Whether Defendants engaged in unfair or deceptive trade practices under Illinois law and/or similar laws of other states;

e.    Whether Defendants asserted to disclaim any implied warranties;

f.    Whether Defendants intended for the toys to be purchased by Plaintiff and Class members, or other consumers for use by children;

g.    Whether using the toys as intended resulted in loss, injury and/or damages to Plaintiff and Class members;

h.    Whether the toys are inherently dangerous;

i.    Whether Defendants are refusing to adequately reimburse Plaintiff and the members of the Class for the cost of the toys;

j.    Whether, as a result of Defendants' omission and reckless conduct, children have been exposed to a known hazardous substance;

k.    Whether Plaintiff and other members of the Class are entitled to injunctive relief; and

l.    Whether Defendants have been unjustly enriched.

67.    **Typicality**:  Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the Class sustained damages arising out of the Defendants'

wrongful conduct as detailed herein.  Specifically, Plaintiff's claims and the Class members' claims arise from Defendants' failure to disclose the fact that the toxic chemical butanediol in Aqua Dots converts to GHB during the Class Period.

68.    **Adequacy**:  Plaintiff will fairly and adequately protect the interests of the Class members and have retained counsel competent and experienced in class action lawsuits.  Plaintiff has no interests antagonistic to or in conflict with those of the Class members and therefore should be an adequate representative for the Class members.

69.    **Superiority**:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable.  Furthermore, because the damages suffered by individual members of the Class may in some instances be relatively small, the expense and burden of individual litigation make it impossible for such Class members individually to redress the wrongs done to them.  Also, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and possibly conflicting adjudications of the claims asserted herein.  There will be no difficulty in the management of this action as a class action.

## VII.  CLAIMS FOR RELIEF

### COUNT ONE
### Damages under the Illinois Consumer Fraud Act

70.    The preceding allegations are re-alleged and incorporated by reference as if fully set forth herein.

71.    Plaintiff and the Class are consumers within the meaning and coverage of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"),  815 ILCS 505/1, et seq.

72.    The Illinois Consumer Fraud Act provides:

> Unfair methods of competition and unfair or deceptive acts
> or practices, including but not limited to the use or
> employment of any deception, fraud pretense, false
> promise, misrepresentation or the concealment, suppression
> or omission of any material fact, with intent that others rely
> upon the concealment, suppression or omission of such
> material fact, or the use or employment of any practice
> described in Section 2 of the "Uniform Deceptive Trade
> Practices Act," approved August 5, 1965, in the conduct of
> any trade or commerce are hereby declared unlawful
> whether any person has in fact been misled, deceived or
> damaged thereby.

815 ILCS 505/2.

73.     Because of its non-disclosure of material facts alleged above, Defendants deceived and continue to deceive Plaintiff and the other members of the Class. Defendants' deceptive conduct occurred in the course of its engaging in trade or commence.

74.     By advertising and marketing Aqua Dots in various media including broadcasts, website, and written promotional and other materials, Defendants have misled consumers about the safety of the toy as described above.  Defendants engaged in these deceptive acts and practices in order that Plaintiff and the Class members, in reliance thereof, would purchase Aqua Dots.

75.     The unfair and deceptive trade acts and practices of Aqua Dots have directly, foreseeably, and proximately caused damages to Plaintiff and the Class members.

76.     Defendants' actions and omissions to act, including the false and misleading express and/or implied representations and omissions of material fact regarding the safety of Aqua Dots, constitute acts, uses, or employment by Defendants and its agents of deception, unconscionable commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material

facts with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of a product, in violation of the Illinois Consumer Fraud Act, making such deceptive acts and practices illegal.

**COUNT TWO**
**Damages under the Illinois Uniform Deceptive Trade Practices Act ("Deceptive Practices Act")**

77.     The preceding allegations are re-alleged and incorporated by reference as if fully set forth herein.

78.     Plaintiff, the Class members, and Defendants are each a "person" within the meaning of 815 ILCS 510/1.

79.     At all times relevant hereto, Defendants conducted trade and commerce within the meaning of 815 ILCS 510/2.

80.     Defendants' unlawful conduct as described herein arose, is directed, and emanates from Defendants' headquarters to the detriment of Plaintiff in Illinois and throughout the United States.

81.     Defendants' actions and omissions to act, including the false and misleading express and/or implied representations and omissions of material fact regarding the safety of Aqua Dots, constitute acts, uses, or employment by Defendants and its agents of deception, unconscionable commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of a product, making such deceptive acts and practices illegal a violation of the provisions of the Illinois Deceptive Practices Act 815 ILCS 510/2.

17

## COUNT THREE
### Breach of Implied Warranty Pursuant to the Illinois U.C.C.

82.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

83.     Under the Uniform Commercial Code in Illinois and in other states, there exists an implied warranty of merchantability.  *See* 810 ILCS 5/2-314.

84.     At the time that Defendants designed, manufactured, sold and/or distributed the toys, Defendants knew the purpose for which the toys were intended and impliedly warranted that the toys were of merchantable quality; were free of hazardous substances such as butanediol or GHB; were free of manufacturing defects; and were safe and fit for their ordinary purpose – play toys for children.

85.     Defendants designed, manufactured, sold and/or distributed the toys to parents, guardians, and other consumers of children's toys.

86.     Plaintiff and the Class relied upon the skill, superior knowledge and judgment of the Defendants to sell toys that were reasonably safe for use by children.  Plaintiff could not have known about the risks associated with the toys until after Defendants issued a public notice recalling the toys announcing that the toys were not safe or fit for the ordinary purpose and intended use, and were not free of manufacturing defects, but instead were potentially laden with butanediol or GHB, which are banned hazardous substances because of their extreme danger when ingested.

87.     Defendants breached their implied warranties under Illinois law in connection with the sale of the toys to Plaintiff and the Class.

88.     The Aqua Dots toys were unmerchantable because the products did not meet the capabilities as represented and marketed.

18

89.     As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff and the Class have been and will suffer damages including economic damages, including the cost of the defective product.

90.     By reason of the foregoing, Defendant is liable to Plaintiff and the Class in an amount to be proved at trial.

## COUNT FOUR
### Unjust Enrichment

91.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

92.     Defendants received from Plaintiff and Class members certain monies from their purchase of Aqua Dots which are excessive and unreasonable, and are the result of Defendants' deceptive conduct.  The Aqua Dots sold by Defendants were unreasonably dangerous and unfit for their intended purpose.

93.     As a result, Plaintiff and the Class have conferred a benefit on Defendants, and Defendants have knowledge of this benefit and have voluntarily accepted and retained the benefit conferred on it.

94.     Defendants will be unjustly enriched if they are allowed to retain such funds, and each Class member is entitled to an amount equal to the amount each Class member enriched Defendants and for which Defendants have been unjustly enriched.

95.     By reason of the foregoing, Defendants are liable to disgorge to Plaintiff and the members of the Class the amount by which each Class member enriched Defendants and for which Defendants have been unjustly enriched.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, pray for judgment against Defendants as follows:

A.      For an order certifying the proposed nationwide Class herein under Federal Rule of Civil Procedure 23(a) and (b)(3), Illinois state class under 735 ILCS 5/2-801,  and appointing Plaintiff and Plaintiff's counsel of record to represent said Class;

B.      For an order that Defendants be permanently enjoined from engaging in the unlawful activities and practices complained of herein;

C.      Awarding actual, compensatory and consequential damages;

D.      For an order requiring Defendants to implement safety systems such as third-party laboratory testing of all products imported from China and requiring Defendants to disclose the identity of the supplier responsible for coating Aqua Dots with the chemical that converts to GHB;

E.      For an order awarding restitution and disgorgement of all monies paid by Plaintiff and the Class  because of Defendants' unlawful, unfair, and/or fraudulent business practices complained of herein;

F.      For an order requiring Defendants to stop their current recall and implement a full recall with reasonable procedures that allow Plaintiff and the Class to easily participate in the recall;

G.      Awarding punitive and treble damages as provided under relevant laws;

H.      For declaratory relief as this Court deems appropriate;

I.      For attorneys' fees and costs of suit, including expert witness fees;

J.      For an order awarding pre-judgment and post-judgment interest as prescribed by law; and

K.      For such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED:  February 6, 2008

Samantha Ford, individually and on behalf
of all others similarly situated,


**/s__William J. Harte**_____
William J. Harte
**WILLIAM J. HARTE LTD.**
111 West Washington Street
Suite 1100
Chicago, Illinois 60602
Telephone:  (312) 726-5015
Facsimile:  (312) 641-2455

*Attorneys Plaintiff Samantha Ford*

*Of Counsel:*

Mila F. Bartos
Tracy Rezvani
Karen J. Marcus
Rosalee B. Connell
**FINKELSTEIN THOMPSON LLP**
The Duval Foundry
1050 30th Street NW
Washington, D.C. 20007
Telephone:  (202) 337-8000
Facsimile:  (202) 337-8090

# EXHIBIT B

RECEIVED

NOV 0 9 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

ROBYN WILLIAMS, individually and
on behalf of all others similarly situated,

                Plaintiff,

    -against-

SPIN MASTER, LTD., a Canadian Corporation,

               Defendant.

    :
    :
    :
    :
    :
    :
    :
    :

*07 CV* _____  **07C  6387**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

**JUDGE COAR**

MAGISTRATE JUDGE NOLAN

Plaintiff, Robyn Williams ("Plaintiff"), individually and on behalf of all others similarly

situated, by and through her undersigned counsel, alleges as follows:

### NATURE OF THE ACTION

1.    Plaintiff brings this action as a Class Action pursuant to Rules 23(a), (b)(l), (b)(2)

and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who purchased Aqua

Dots manufactured, marketed, and/or distributed by Spin Master, Ltd. ("Spin Master" or

"Defendant"), between April 2007, to the present (the "Relevant Period"), coated with 1,4-

butanediol, which if ingested can metabolize into gamma-Hydroxybutyric acid ("GHB"),

commonly known as the date rape drug.

2.    Despite marketing its Aqua Dots as safe for young children, Defendant distributed

this product with a chemical that, if ingested, is poisonous and banned for distribution in the

United States and Canada.

3.    Since April 2007, Defendant has manufactured or caused to be manufactured,

marketed, and/or distributed approximately 4.2 million Aqua Dot products designed for young

children, who can be expected to lick, suck, bite, or even swallow the toys, and/or put their hands

in contact with their mouths after touching the toys, thereby ingesting the poisonous elements of the product.

4.    The substance GHB, commonly known as the date rape drug, once in a person's system, can cause them to slip into a coma and possibly die. It is not safe for general consumption and its dispensation must be monitored by a physician.

5.    On November 7, 2007, the U.S. Consumer Product Safety Commission ("CPSC") announced a recall of the Aqua Dots products. Despite the recall, on information and belief, Defendant has not offered to reimburse Plaintiff or other members of the Plaintiff Class for the costs of the Aqua Dots. Rather, Defendant is offering to provide for replacement toys. Defendant's offer is inadequate and fails to compensate Plaintiff and other members of the Plaintiff Class for their damages or make them whole.

6.    The Aqua Dots are not fit for their ordinary use and are of no value to consumers. Consumers purchasing them, including Plaintiff, did not receive the benefit of their bargain.

7.    As a result of Defendants' negligent and reckless conduct, Plaintiff's children and the children of members of the Putative Class have been exposed to a known hazardous substance. As a result of such exposure, the children are at an increased risk of becoming severely ill, or even dying.

JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over this nationwide class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because:  1) the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs; and 2) at least one member of the Class is a citizen of a different state than Defendant (Defendant is an Alien corporation). See 28 U.S.C. § 1332(d)(2)(A). This Court also has personal jurisdiction over Defendant because it does business in this state, and Defendant has sufficient minimum contacts

2

with this state and otherwise intentionally avails itself of the markets in this state through the promotion, marketing and sale of its products in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.     Venue is proper in the Northern District of Illinois because Defendant is an alien corporation, with its headquarters and principal place of business in Toronto, Ontario Canada.

PARTIES

10.     Plaintiff Robyn Williams is and has been a resident and citizen of Grady County, Oklahoma, during the Relevant Period. Specifically, Plaintiff owns Aqua Dots purchased from a Wal-Mart Superstore located in Chickasha, Oklahoma, in the month of September 2007. During the Relevant Period, Plaintiff's daughter has played with her recalled Aqua Dots. Plaintiff allowed her child to do so with no expectations that Aqua Dots were made with a hazardous substance and were seriously harmful to her child's health. Plaintiff and other members of Plaintiff Class were deceived because Defendant could not have represented the toys were fit for their ordinary purpose because of the chemical coatings they were made with. Plaintiff and other members of Plaintiff Class would not have purchased the toy had they known of the exposure to the concerned chemicals.

11.     Defendant Spin Master Ltd. is a Canadian Corporation doing business in and selling its Aqua Dots throughout the entire United States and Canada. Spin Master sells its products through chain retailers, specialty retailers, and wholesalers. Spin Master operates throughout the world, including in the United States, Canada, Australia, and Asia Pacific.

STATEMENT OF FACTS

12.     Defendant's marketing campaign for Aqua Dots toys is built around assuring parents that its toys are safe for use by children.

13.     Plaintiff and other members of the Plaintiff Class were deceived by Defendant's

3

material omissions and failure to state that its Aqua Dots toys were coated with 1,4-butanediol, a substance that once metabolized, becomes GHB, which is commonly known as the date rape drug.

14.    It is believed that the products were intended to be coated with the non-toxic chemical 1,5-pentanediol. It is further believed that at the time the substitution of 1,4-butanediol was discovered, 1,5-pentanediol, a non-toxic ingredient that lacks the harmful effects of 1,4-butanediol, was three to seven times more expensive than the dangerous chemical actually used.

15.    Plaintiff purchased the Aqua Dots toy reasonably believing that it was safe for her child to play with as children normally do, including with the knowledge that children often place toys in their mouths, as well as their hands after coming in contact with the toys, while playing.

16.    Despite its representation that the Aqua Dots toys were safe for children, but pursuant to Defendant's omissions regarding the hazardous nature of its products, Defendant distributed its Aqua Dots toys, which were manufactured in China, and which contain the chemical 1,4-butanediol.

17.    The Aqua Dots toys were sold at various retailers throughout the United States between April 2007 and the present. Defendant distributed approximately 4.2 million of the toys covered with the toxic chemical.

18.    The Aqua Dots toys were sold at prices ranging from $17 to as much as $30.

19.    Ingestion of 1,4-butanediol, a substance that once metabolized, becomes GHB, commonly known as the date rape drug, is reported to cause vomiting, severe illness, respiratory depression, seizures, slipping into a coma, or even death.

20.    Accordingly, Defendant knew or should have known that manufacturing and

4

distributing Aqua Dots toys coated with 1,4-butanediol, a highly toxic chemical, was dangerous to children and such toys were not safe as Defendant represented them to be.

21. On November 7, 2007, the U.S. Consumer Product Safety Commission ("CPSC") announced a voluntary recall of the Aqua Dots toys. The CPSC Press Release is attached hereto as Exhibit A.

22. As part of the recall, Defendant has offered purchasers of these dangerous toys the ability to obtain a toy of equal value or one which is not coated with 1,4-butanediol.

23. The relief proposed by Defendant is wholly inadequate. Plaintiff seeks a full refund for all amounts spent on this defective toy by herself and all other Plaintiff Class members similarly situated.

CLASS CERTIFICATION

24. This action is brought as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons throughout the United States and its territories who purchased Aqua Dots toys that were coated with the chemical 1,4-butanediol between April 2007 and the present, which were manufactured, imported, marketed, and/or distributed by Defendant.

25. Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court. The identity and exact number of Class members is unknown but can be determined from Defendant. It is estimated to be hundreds of thousands or more.

26. Plaintiff's claims are typical of those of other Plaintiff Class members, all of whom have suffered harm due to Defendant's uniform course of conduct.

27. Plaintiff is a member of the Plaintiff Class.

28. There are numerous and substantial questions of law and fact common to all of the members of the Plaintiff Class which control this litigation and predominate over any individual issues pursuant to Rule 23(b)(3). These common issues include, but are not limited to:

a) Whether the products are defective;

b) Whether the products are inherently dangerous;

c) Whether, as a result of Defendant's negligent and reckless conduct, children have been exposed and continue to be exposed to a known hazardous substance;

d) Whether Plaintiff and other members of the Plaintiff Class are entitled to injunctive relief;

e) Whether Defendant has been unjustly enriched; and

f) Whether Plaintiff and Plaintiff Class members were damaged and in what amount.

29.     Defendant's conduct is such that it is appropriate that there be final injunctive relief to enjoin its conduct with respect to the Plaintiff Class as a whole pursuant to Rule 23(b)(2).

30.     A class action is the appropriate method for the fair and efficient adjudication of this controversy for the following reasons:

a)     Without a class action, the Plaintiff Class will continue to suffer damage, Defendant's violations of the law or laws will continue without remedy, and Defendant will continue to enjoy the fruits and proceeds of its unlawful misconduct;

b)     Given (i) the substantive complexity of this litigation; (ii) the size of individual Plaintiff Class members' claims; and (iii) the limited resources of the Plaintiff Class members, few, if any, Plaintiff Class members could afford to seek legal redress individually for the wrongs Defendant has committed against them;

c)     This action will foster an orderly and expeditious administration of Plaintiff Class members' claims, economies of time, effort and expense, and uniformity of decision; and

d)     Inferences and presumptions of materiality and reliance are available to obtain class-wide determinations of those elements within the Plaintiff Class members' claims, as are accepted methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendant's common liability, the Court can efficiently determine the claims of the individual Plaintiff Class members; and this action presents no difficulty that would impede the Court's management of it as a class action, and a

6

class action is the best (if not the only) available means by which members of the Plaintiff Class can seek legal redress for the harm caused them by Defendant.

CLAIMS FOR RELIEF

**COUNT I**

(Breach of Implied Warranty Pursuant to the Illinois U.C.C.)

31.     Plaintiff re-alleges paragraphs 1 through 30 as if fully set forth herein.

32.     Under the Uniform Commercial Code in Illinois and in other states, there exists an implied warranty of merchantability. *See* 810 ILCS 5/2-314.

33.     Defendant, in the manufacture, production, and sale of its products impliedly warranted to Plaintiff and other members of the Plaintiff Class that the products were fit for their ordinary purpose, as toys for use by children and, in particular, young children.

34.     Defendant breached the implied warranty of merchantability by selling children's toys that are dangerous to children and cannot safely be used for their ordinary purpose.

35.     The Aqua Dots toys were in fact unmerchantable because they could not safely be used for their ordinary and intended purpose.

36.     Defendant knew or should have known that the products did not meet the capabilities as represented and marketed.

37.     Plaintiff and members of the Plaintiff Class have been and will be damaged and have suffered and will suffer direct economic damage, including the cost of the defective product.

38.     By reason of the foregoing, Defendant is liable to Plaintiff and the members of the Plaintiff Class in an amount to be proved at trial.

7

## COUNT II

(Breach of Implied Warranty Pursuant to the Magnuson-Moss Warranty Act)

39. Plaintiff re-alleges paragraphs 1 through 30 as if fully set forth herein.

40. The Magnuson-Moss Warranty Act provides for a civil action by consumers for failure to comply with implied warranties arising under state law. *See* 15 U.S.C. § 2310 (d)(1).

41. Defendant, in the manufacture, production, and sale of its products impliedly warranted to Plaintiff and other members of the Plaintiff Class that the products were fit for their ordinary purpose, as toys for use by children and, in particular, young children.

42. Defendant breached the implied warranty of merchantability under Illinois law and other states' laws by selling children's toys that are dangerous to children and cannot safely be used for their ordinary purpose.

43. The Aqua Dots toys were in fact unmerchantable because they could not safely be used for their ordinary and intended purpose.

44. Defendant knew or should have known that the products did not meet the capabilities as represented and marketed.

45. Plaintiff and members of the Plaintiff Class have been and will be damaged and have suffered and will suffer direct economic damage, including the cost of the defective product.

46. By reason of the foregoing, Defendant is liable to Plaintiff and the members of the Plaintiff Class in an amount to be proved at trial.

8

## COUNT III

### (Strict Liability)

47. Plaintiff re-alleges paragraphs 1 through 30 as if fully set forth herein.

48. Defendant is strictly liable for damages because:

   a) it placed the defective product, the Aqua Dots toy covered with a toxic chemical, in the stream of commerce;

   b) the condition of the product—being covered with a toxic chemical—rendered it unreasonably dangerous;

   c) the inherently dangerous condition existed when the product left the control of Defendant; and

   d) the condition represents a proximate cause of injury.

49. Plaintiff and the other members of the Plaintiff Class may recover for economic loss because their damages are proximately caused by Defendant's intentional, false representation that the products are safe when, in fact, they are not, and by Defendant's material omissions.

50. Plaintiff and members of the Plaintiff Class have been and will be damaged and have suffered and will suffer direct economic loss, including the cost of the defective product.

51. By reason of the foregoing, Defendants is liable to Plaintiff and the members of the Plaintiff Class in an amount to be proved at trial.

## COUNT IV

### (Negligence)

52. Plaintiff realleges paragraphs 1 through 30 as if fully set forth herein.

53. By manufacturing, marketing, and/or distributing children's toys, Defendant owed

9

Plaintiff and members of the Plaintiff Class a duty to provide a children's toy free of defects and health hazards.

54.     Defendant breached this duty when it manufactured, marketed, and/or distributed toys that were coated with a toxic chemical, 1,4-butanediol, a substance that if ingested, metabolizes into GHB, the date rape drug, and can result in vomiting, severe illness, respiratory depression, seizures, slipping into a coma, or even death.

55.     As a direct and proximate result of Defendant's breach, Plaintiff and other members of Plaintiff Class were exposed to the hazard of having their children ingest this highly toxic chemical, and its associated severe risks for illness and death.

56.     Plaintiff and the other members of the Plaintiff Class may recover for economic loss because their damages are proximately caused by Defendant's intentional, false representation that the products are safe when, in fact, they are not, and by Defendant's material omissions.

57.     Plaintiff and members of the Plaintiff Class have been and will be damaged and have suffered and will suffer direct economic loss, including the cost of the defective product.

58.     By reason of the foregoing, Defendant is liable to Plaintiff and the members of the Plaintiff Class in an amount to be proved at trial.

## COUNT V

### (Unjust Enrichment)

59.     Plaintiff realleges Paragraphs 1 through 30 as if fully set forth herein, and pleads this count in the alternative.

60.     Defendant received from Plaintiff and Plaintiff Class members certain monies from their purchase of Aqua Dots toys that are excessive and unreasonable, and are the result of

10

Defendant's deceptive conduct. The Aqua Dots toys sold by Defendant were unreasonably dangerous and unfit for their intended purpose.

61. As a result, Plaintiff and other members of the Plaintiff Class have conferred a benefit on Defendant, and Defendant has knowledge of this benefit and has voluntarily accepted and retained the benefit conferred on it.

62. Defendant's retention of this benefit further violates principles of fairness, equity, good conscience, social responsibility, and fair dealing.

63. Plaintiff lacks an adequate remedy at law.

64. Defendant will be unjustly enriched if it is allowed to retain such funds, and each Plaintiff Class member is entitled to, at a minimum, an amount equal to the amount each Plaintiff Class member enriched Defendant and for which Defendant has been unjustly enriched.

65. By reason of the foregoing, Defendant is liable to disgorge to Plaintiffs and the members of the Plaintiff Class, at a minimum, the amount by which each Plaintiff Class member enriched Defendant and for which Defendant has been unjustly enriched.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the other Plaintiff Class members request that the Court enter an order or judgment against Defendant including the following:

a. Certification of the action as a Class Action pursuant to Rule 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and Plaintiff's counsel of record as Class Counsel;

b. Damages in the amount of monies paid for the Aqua Dots toys;

c. Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

11

     d.     Pre-judgment and post-judgment interest on such monetary relief;

     e.     Other appropriate injunctive relief;

     f.     The costs of bringing this suit, including reasonable attorneys' fees, costs, and expenses; and

     g.     All other relief to which Plaintiff and members of the Plaintiff Class may be entitled at law or in equity.

### DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on any and all counts for which trial by jury is permitted by law.

Dated: November 9, 2007

                              Robyn Williams, individually and on
                              behalf of all others similarly situated,

By: _____
                              Ben Barnow
                              Sharon Harris
                              Erich Schork
                              Barnow and Associates, P.C.
                              One North LaSalle Street, Suite 4600
                              Chicago, IL 60602
                              Telephone: (312) 621-2000
                              Facsimile: (312) 641-5504

                              *Attorneys for Plaintiff*

Aron D. Robinson
The Law Office of Aron D. Robinson
19 S. LaSalle Street, Suite 1300
Chicago, IL 60603
Telephone: (312) 857-9050
Facsimile: (312) 857-9054

*Of Counsel:*

Scott R. Tack
Allen Allen & Tack
P.O. Box 1409
210 Chickasha Ave.
Chickasha, OK 73023
Telephone: (405) 224-3111
Facsimile: (405) 224-8312

Lance A. Harke, P.A.
Sarah Clasby Engel, P.A.
Harke & Clasby LLP
155 South Miami Ave., Suite 600
Miami, Florida 33130
Telephone: (305) 536-8220
Facsimile: (305) 536-8229

# Exhibit A

# NEWS from CPSC

## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs                    Washington, DC 20207

FOR IMMEDIATE RELEASE                    **Firm's Recall Hotline: (800) 622-8339**
November 7, 2007                                    CPSC Recall Hotline: (800) 638-2772
Release #08-074                                    CPSC Media Contact: (301) 504-7908

# Spin Master Recalls Aqua Dots – Children Became Unconscious After Swallowing Beads

WASHINGTON, D.C. - The U.S. Consumer Product Safety Commission, in cooperation with the firm named below, today announced a voluntary recall of the following consumer product. Consumers should stop using recalled products immediately unless otherwise instructed.

**Name of Product:** Aqua Dots

**Units:** About 4.2 million

**Distributor:** Spin Master, of Toronto, Canada

**Hazard:** The coating on the beads that causes the beads to stick to each other when water is added contains a chemical that can turn toxic when many are ingested. Children who swallow the beads can become comatose, develop respiratory depression, or have seizures.

**Incidents/Injuries:** CPSC has received two reports over the past several days of children swallowing Aqua Dots. A 20-month-old child swallowed several dozen beads. He became dizzy and vomited several times before slipping into a comatose state for a period of time, was hospitalized, and has since fully recovered. A second child also vomited and slipped into a comatose state and was hospitalized for five days.

**Description:** The recalled toy is a craft kit which allows children to create various multi-dimensional designs using small colored beads. The beads fuse together when sprayed with water. The recall applies to all models of Aqua Dots. The product is available in various different kits with accessories such as a drying fan, applicator pen, design templates for the beads, and spray bottle. The product is labeled for ages 4+.

**Sold at:** Mass merchandisers nationwide from April 2007 through November 2007 for between $17 and $30.

**Manufactured in:** China

**Remedy:** Consumers should immediately take the recalled toy away from children and contact Spin Master to return for free replacement beads or a toy of equal value.

**Consumer Contact:** For additional information, contact Spin Master at (800) 622-8339 between 9

Case 1:07-cv-00847    Document 13-23    Filed 03/07/2008    Page 48 of 48

a.m. and 6 p.m. ET Monday through Friday, or visit the firm's Web site at www.aquadotsrecall.com



---

Send the link for this page to a friend! The U.S. Consumer Product Safety Commission is charged with protecting the public from unreasonable risks of serious injury or death from more than 15,000 types of consumer products under the agency's jurisdiction. Deaths, injuries and property damage from consumer product incidents cost the nation more than $700 billion annually. The CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard or can injure children. The CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed significantly to the 30 percent decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

To report a dangerous product or a product-related injury, call CPSC's hotline at (800) 638-2772 or CPSC's teletypewriter at (800) 638-8270, or visit CPSC's web site at www.cpsc.gov/talk.html. To join a CPSC email subscription list, please go to www.cpsc.gov/cpsclist.aspx. Consumers can obtain this release and recall information at CPSC's Web site at www.cpsc.gov.